## BILLINGS *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

## UNITED STATES *v.* BILLINGS.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 66 and 625. Argued January 6, 7, 1914.—Decided February 24, 1914.

The jurisdiction of this court on direct writ of error is not confined to the constitutional questions, but embraces every issue in the case. *Williamson* v. *United States*, 207 U. S. 425.

The Circuit Court of Appeals has no power to ask instructions upon an issue which it has no right to decide, nor has this court authority to instruct on such a subject.

This court cannot refuse to decide questions which are properly before it for judgment.

Where one party has taken a writ of error direct from this court to the Circuit Court based on the constitutional question decided against

it, and the other party has obtained a writ of error from the Circuit Court of Appeals as to other questions decided against it, which court has certified that question to this court, and the record is in such condition as to enable this court to decide the whole case, this court may treat the writ of error from the Circuit Court of Appeals as a cross-writ and so determine all the issues involved.

Under § 37 of the Tariff Act of August, 1909, imposing a tax on the use of foreign-built yachts owned or chartered for more than six months by citizens of the United States, to be collected annually on September 1, the tax became due on the first day of September next occurring after the act became effective; further *held* that the six months' clause relates only to the chartering of the yachts, and the word "annually" indicates continuity and that the tax is not a sporadic one to cease after a single payment.

Where words are used in a statute in their every-day sense and not in a technical one, they should be so construed.

The use of a foreign-built yacht which renders the owner subject to the tax imposed by § 37 of the Tariff Act of 1909 is active and actual use and not the potential use arising from the mere fact of ownership. See *Pierce* v. *United States*, p. 290, *post*.

The fact that a tax statute operates retroactively does not necessarily cause it to be unconstitutional. *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107.

The rule that statutes should be construed if possible so as not to operate retroactively does not authorize a judicial reënactment of the statute to save it from acting retroactively if Congress intended it so to do.

Section 37 of the Tariff Act of 1909, imposing a tax on foreign-built yachts, is not unconstitutional because it operates retroactively as to the tax levied for the year 1909, and the use of yachts within the meaning of the statute during the year 1909, renders the owner or charterer liable for the tax for that year.

The requirement of uniformity imposed by the Constitution on Congress in levying excise taxes is not intrinsic but geographic.

The Constitution is not self-destructive—it does not take away by one provision powers conferred by another, and the express authority to tax is not limited or restricted by subsequent provisions or amendments, especially the due process clause of the Fifth Amendment. *McCray* v. *United States*, 195 U. S. 27.

The difference between things domestic and things foreign is recognized by the Constitution itself, and a classification for taxation of foreign-

built yachts is not so repugnant to justice as to amount to denial of due process of law because domestic-built yachts are not subject to the same tax; nor is § 37 of the Tariff Act of 1909, unconstitutional for lack of uniformity.

The state rule as to interest on taxes differs from the United States rule—the former excludes interest unless the statute so provides; the latter allows interest unless forbidden by statute. This court will not now apply the state rule, as to do so would repudiate settled principles and disregard the sanction expressly or impliedly given by Congress to the rule adopted by the Federal courts.

The Government is entitled to interest on taxes on use of foreign-built yachts under § 37 of the Tariff Act of 1909, from the date when the taxes become due, and may maintain an action against the owner or charterer therefor.

190 Fed. Rep. 359, modified and affirmed.

THE facts, which involve the construction and constitutionality of § 37 of the Tariff Act of 1909, imposing a tax on the use of foreign-built yachts, are stated in the opinion.

*Mr. William D. Guthrie* for the owners of foreign-built yachts, in this and other cases argued simultaneously herewith:

The classification in § 37 violates the Fifth Amendment.

A tax law must be imposed impartially upon all in the same class similarly situated, and must apply equally and uniformly to all persons in like circumstances or under like conditions.

The yacht owners purchased their yachts when no import duty or excise tax was imposed or ever had been imposed by Congress upon foreign-built yachts, *The Conqueror*, 166 U. S. 110, and presumably have duly paid the tonnage tax laid upon all vessels classed as foreign. The practical effect of this legislation is to penalize them and compel them to pay an import duty of thirty-five per centum *ad valorem* as the alternative to submitting to this new tax. The act is precisely the same as if it had provided in so many words that all citizens who had theretofore acquired foreign-built yachts should pay a retrospective im-

port "duty of thirty-five per centum *ad valorem*" in order to escape an annual tax of seven dollars per ton.  *Henderson* v. *New York*, 92 U. S. 259, 268; *Bailey* v. *Alabama*, 219 U. S. 219, 244.  See Cooley on Taxation, 3d ed., pp. 4, 260.

The classification is in conflict with sound principles of constitutional taxation.  *Knowlton* v. *Moore*, 178 U. S. 41, 77; *Am. Sugar Co.* v. *Louisiana*, 179 U. S. 89, 92; *The Conqueror*, 166 U. S. 110, 115.  See also *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 237; *Gulf, Colo. &c. Ry.* v. *Ellis*, 165 U. S. 150, 165; *Magoun* v. *Illinois Trust Bank*, 170 U. S. 283, 301; *Home Ins. Co.* v. *New York*, 134 U. S. 594, 606, 607; *Giozza* v. *Tiernan*, 148 U. S. 657, 662; *Pollock* v. *Farmers' L. & T. Co.*, 157 U. S. 429, 599; *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114, 121; *Detroit &c. Ry. Co.* v. *Fuller*, 205 Fed. Rep. 86, 89; *Southern Ry. Co.* v. *Greene*, 216 U. S. 400.

As to the selection of property according to origin as a subject for a special form of taxation, see *Phillips* v. *Raynes*, 136 App. Div. 417, aff'd 198 N. Y. 539, holding void under the Fourteenth Amendment, § 190 of the New York Labor Law prohibiting sale of convict-made goods without the payment of an annual license fee of $500.  See also *Farrington* v. *Mensching*, 187 N. Y. 8, 17; *People* v. *Hawkins*, 157 N. Y. 1, 9; *Knowlton* v. *Rock County*, 9 Wisconsin, 410, 422.

While in the case of import duties the foreign origin of the article imported is necessarily the basis and test of the duty, the yacht tax now before the court purports to be an excise tax upon the use of an article and not upon its importation.  The law, therefore, must be treated solely as an excise tax upon use, and cannot be sustained upon a theory which might uphold an import duty.

There is no substantial difference between the requirement of due process of law contained in the Fifth Amendment and that in the Fourteenth Amendment.  *Carroll* v.

*Greenwich Ins. Co.,* 199 U. S. 401, 410; *Twining* v. *New Jersey,* 211 U. S. 78, 101.

The act of Congress requires use of a foreign-built yacht during the taxable period.

Tax statutes, especially when attempting to impose special, novel and extraordinary taxes, should be strictly construed, and, if any ambiguity be found to exist, it must be resolved in favor of the citizen. *Eidman* v. *Martinez,* 184 U. S. 578, 583; *United States* v. *Wigglesworth,* 2 Story, 369, 374; *Mutual Benefit Life Ins. Co.* v. *Herold,* 198 Fed. Rep. 199, 201, aff'd 201 Fed. Rep. 918; *Parkview Bldg. Assn.* v. *Herold,* 203 Fed. Rep. 876, 880; *Mutual Trust Co.* v. *Miller,* 177 N. Y. 51, 57.

The language plainly indicates that it was the intention to levy a tax not upon foreign-built yachts as property but solely upon their use. *The Anjer Head,* 46 Fed. Rep. 664.

The distinction between an excise tax on the use of a thing and a direct tax upon the thing itself is, of course, fundamental and substantial. But it would vanish into nothingness if "use" be now construed to mean not actual use at all but mere capacity for use.

The word "use" was advisedly employed in order to avoid creating what might be held to be a direct tax on the property, and as such necessary to be apportioned. *Pollock* v. *Farmers' L. & T. Co.,* 157 U. S. 429; 158 U. S. 601; *McCoach* v. *Minehill Railway Co.,* 228 U. S. 295, 306. The court will not, therefore, now adopt a construction of the statute which would create grave doubts as to its constitutionality, when another construction, which avoids all constitutional difficulties, is not only equally consistent with the terms of the act, but more consonant with its plain intent. *United States* v. *Del. & Hud. Co.,* 213 U. S. 366, 408; *The Abby Dodge,* 223 U. S. 166, 175; *United States* v. *Nipissing Mines Co.,* 206 Fed. Rep. 431; *Abrast Realty Co.* v. *Maxwell,* 206 Fed. Rep. 333.

The tax is not leviable in respect of foreign-built yachts not within the jurisdiction of the United States.

Property in order to be the subject of taxation must be within the jurisdiction of the power assuming to tax. *Buck* v. *Beach*, 206 U. S. 392, 400.   If the yachts in question had no permanent situs anywhere, the fact that their owners were domiciled abroad would fix their situs there. *Southern Pacific Co.* v. *Kentucky*, 222 U. S. 63, 69; *Union Transit Co.* v. *Kentucky*, 199 U. S. 194.

The power to tax depends upon jurisdiction of the subject-matter of the tax.

Taxation must have relation to some subject-matter actually within the jurisdiction of the taxing power, otherwise it violates the constitutional guaranty against the taking of property without due process of law.   Neither a State nor the Federal Government can tax the property of citizens situated in foreign countries, or the use of such property in foreign countries.   *Railroad Co.* v. *Jackson*, 7 Wall. 262, 267; *State Tax on Foreign-held Bonds*, 15 Wall. 300, 319; *Pullman Co.* v. *Pennsylvania*, 141 U. S. 18, 22; *Louisville Ferry Co.* v. *Kentucky*, 188 U. S. 385, 398; *Old Dominion S. S. Co.* v. *Virginia*, 198 U. S. 299, 307; *Delaware &c. R. R.* v. *Pennsylvania*, 198 U. S. 341, 353; *Chi., B. & Q. Ry. Co.* v. *Babcock*, 204 U. S. 585, 592; *Metropolitan Life Ins. Co.* v. *New Orleans*, 205 U. S. 395, 399; *Selliger* v. *Kentucky*, 213 U. S. 200, 203; *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 1, 38; *Southern Pacific Co.* v. *Kentucky*, 222 U. S. 63, 73; *Gromer* v. *Standard Dredging Co.*, 224 U. S. 362, 372, 376, 377; *Detroit &c. Ry. Co.* v. *Fuller*, 205 Fed. Rep. 86, 90.

There is no law of the United States which authorizes the Secretary of the Treasury to extend any special right or privilege to foreign-built yachts owned by American citizens, and the action of the Treasury Department cannot make these yachts American vessels or classify them otherwise than Congress has done.   *White's Bank* v. *Smith*, 7 Wall. 646, 655, 656.

Conceding that Congress has power to tax the use of foreign-built yachts owned and used outside of the United States by American citizens permanently residing abroad, it has not expressed the intention so to do. Such a novel tax burden should be expressed in plain terms, free from doubt or ambiguity. *Eidman* v. *Martinez*, 184 U. S. 578, 583; *Lynch* v. *Union Trust Co.*, 164 Fed. Rep. 161, 163.

Section 37 fails to reveal any such legislative intent. 190 Fed. Rep. 368, 369.

Section 37 should not be construed as retrospective so as to tax the use of foreign-built yachts during the year 1909.

One who has owned property, or exercised or enjoyed a right or privilege, or carried on a vocation, at a time and under circumstances when such ownership or acts were not taxable, ought not to be subjected to a special, novel and extraordinary tax by a subsequent statute operating retrospectively upon his past ownership or acts. *N. Y. C. & H. R. R. R. Co.* v. *Gaus*, 200 N. Y. 328, 330.

A tax should not be levied upon past ownership so as to cover a period when the property was not subject to taxation. *People* v. *Trust Co. of America*, 205 N. Y. 74, 77. A statute imposing a tax upon use should not be construed retrospectively unless the language imperatively requires it. *U. S. Fidelity Co.* v. *Struthers*, 209 U. S. 306, 314; *United States* v. *Heth*, 3 Cr. 399, 413; *Assur. Soc'y* v. *Miller*, 179 N. Y. 227; 180 N. Y. 525, 526; *Metz* v. *Hagerty*, 51 Oh. St. 521. See also *United States* v. *Burr*, 159 U. S. 78, 82; *United States* v. *Am. Sugar Co.*, 202 U. S. 563, 577; *Holliday* v. *Atlanta*, 96 Georgia, 377; *Young* v. *Henderson*, 76 N. Car. 420; 2 Lewis' Sutherland Stat. Const. (2d ed.), p. 640.

If it be held that it must be presumed that Congress intended that the obligation to pay the tax should begin to accrue from the date when the act took effect, this annual tax on use should be apportioned according to the period of actual use during the year ending September 1, 1909,

while the tax law was in force and operation. *Mutual Trust Co.* v. *Miller,* 177 N. Y. 51, 54, 56. See *Lincoln Trust Co.* v. *Glynn,* 132 App. Div. 546, 547, aff'd 198 N. Y. 501, and distinguished in *N. Y. C. & H. R. R. R. Co.* v. *Gaus,* 200 N. Y. 328, 331.

The Government is not entitled to recover interest. The burden of a tax should not be increased by the addition of interest unless such a purpose of the legislature has been clearly expressed. *Hartford* v. *Hills,* 75 Connecticut, 599, 600. What the State omitted to demand, the court cannot require. *People* v. *Gold & Stock Tel. Co.,* 98 N. Y. 67, 80.

The act itself shows that Congress did not intend to exact interest as a penalty for delay in payment of the tax.

Courts may not find an intention to impose interest as a penalty for delay in payment of taxes and cannot award interest on taxes unless there be some express statutory provision to that effect. *Crabtree* v. *Madden,* 54 Fed. Rep. 426, 431; *People* v. *Gold & Stock Tel. Co.,* 98 N. Y. 67, 79; *Rochester* v. *Bloss,* 185 N. Y. 42, 52; *Camden* v. *Allen,* 26 N. J. L. 398, 399; *Belvidere* v. *Warren R. R. Co.,* 34 N. J. L. 193, 199; *Road Commissioners* v. *Freeholders,* 44 N. J. L. 570, 571, aff'd 45 N. J. L. 173; *Brennert* v. *Farrier,* 47 N. J. L. 75; *Shaw* v. *Peckett,* 26 Vermont, 482, 486; *Hughes* v. *Kelley,* 69 Vermont, 443, 445; *Perry* v. *Washburn,* 20 California, 318, 350; *People* v. *C. P. R. R. Co.,* 105 California, 576, 595; aff'd 162 U. S. 91; *Sargent & Co.* v. *Tuttle,* 67 Connecticut, 162, 167; *Hartford* v. *Hills,* 72 Connecticut, 599; *Cromwell* v. *Savage,* 85 Connecticut, 376, 377; *Stitt* v. *Stringham,* 55 Oregon, 89, 94; *State* v. *Mutual Life Ins. Co.,* 175 Indiana, 59, 85; *State* v. *Southwestern R. R. Co.,* 70 Georgia, 11, 32, 33; *Georgia R. R. Co.* v. *Wright,* 124 Georgia, 596, 618; 125 Georgia, 589, 610, reversed on other grounds in 207 U. S. 127; *McWilliams* v. *Jacobs,* 128 Georgia, 375, 378; *Louisville & N. R. Co.* v. *Commonwealth,* 89 Kentucky, 531, 538; *Illinois Cent. R. Co.* v. *Adams,* 29 So. Rep. 996, 997 (Miss.); *New Whatcom* v. *Roe-*

*der,* 22 Washington, 570, 575; *State* v. *New England Furniture. Co.,* 107 Minnesota, 52, 53; *Perry County* v. *Railroad Co.,* 65 Alabama, 391, 401; *Edmonson* v. *Galveston,* 53 Texas, 157, 161; *West. Un. Tel. Co.* v. *State,* 55 Texas, 314, 319, reversed on other grounds in 105 U. S. 460; *Cave* v. *Houston,* 65 Texas, 619, 622; *Brooks* v. *State,* 58 S. W. Rep. 1032, 1035 (Tex.); *Rockland* v. *Ulmer,* 87 Maine, 357, 361; *Danforth* v. *Williams,* 9 Massachusetts, 324; *Greer* v. *Richards,* 3 Arizona, 227, 235; 1 Cooley on Taxation, 3d ed., pp. 19, 20; 27 Am. & Eng. Encyc. of L., 2d ed., p. 777; 37 Cyc. 1165.

This is not a suit for the recovery of taxes in an action in the nature of debt as *Meredith* v. *United States,* 13 Pet. 486; *United States* v. *Chamberlin,* 219 U. S. 250. The form of procedure cannot change their character. See also *Boston* v. *Turner,* 201 Massachusetts, 190, 193; *Gautier* v. *Ditmar,* 204 N. Y. 20, 27.

In nearly all of the tax cases cited by the Government in the court below, the question of interest was not before the court.

*Mr. Assistant Attorney General Adkins,* with whom *Mr. Karl W. Kirchwey* was on the brief, for the United States, in this and other cases argued simultaneously herewith:

The tax was due September 1, 1909. The act was approved August 5, 1909, and took effect from its passage. The act, as so construed, is not retroactive. Endlich, Statutes, § 280; *Johnston* v. *United States,* 17 Ct. Cl. 157, 171; *Locke* v. *New Orleans,* 4 Wall. 172; *People* v. *Spring Valley Co.,* 92 N. Y. 383, 390; *Frellsen* v. *Mahan,* 21 La. Ann. 79, 103; *McClellan* v. *Railroad,* 11 Lea (Tenn.), 336. See also *State* v. *Certain Lands,* 40 Arkansas, 344; *Litson* v. *Smith,* 68 Mo. App. 397, 402; *Fennell* v. *Pauley,* 112 Iowa, 94; *Hudson* v. *Miller,* 10 Kans. App. 532; *Hardesty* v. *Fleming,* 57 Texas, 395; *Brown* v. *Houston,* 114 U. S. 622.

The contention that another rule of construction applies to an indirect tax like the present cannot prevail. The tax is upon the present use of the property, whether that use has endured for a year or for a day. The tax is called an annual one, which means that the tax is to be collected once a year.

Even if such construction does give the statute a retroactive effect, Congress intended the tax to be paid September 1, 1909.

Congress has the power to lay a retrospective tax. *Locke* v. *New Orleans*, 4 Wall. 172; *Stockdale* v. *Ins. Companies*, 20 Wall. 323, 331; *Railroad Co.* v. *Rose*, 95 U. S. 78, 80; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 108; Cooley, Taxation, 3d ed., 492, 494.

Courts will construe a statute retrospectively when that is clearly the legislative intent. *Stephens* v. *Cherokee Nation*, 174 U. S. 445; *Lamb* v. *Powder River Co.*, 132 Fed. Rep. 434.

The language of the act shows a clear intention to make it immediately effective. *Pauley Mfg. Co.* v. *Crawford County*, 84 Fed. Rep. 942.

Punctuation is to be given little weight in determining the legislative intent. *Hammock* v. *Loan & Trust Co.*, 105 U. S. 77, 84; *Stephens* v. *Cherokee Nation*, 174 U. S. 445, 480.

A construction which leads to absurd and unjust consequences is to be avoided if possible. *Pickett* v. *United States*, 216 U. S. 456, 461.

The tax cannot be apportioned. *McClellan* v. *Railroad*, 11 Lea, 336.

The tax is upon consumption or upon the privilege of using, and is not avoided by failure to employ the yacht on cruises.

The language of the act indicates that the tax is to be levied upon the use of foreign-built yachts.

The transaction of active business is the thing taxed;

the income derived therefrom is included in the measure of the tax. Were it otherwise the tax would probably run counter to the decision of this court in *Pollock* v. *Farmers' L. & T. Co.*, 157 U. S. 429.

A privilege tax is not direct simply because measured by capacity for use. *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 166; *United States* v. *Singer*, 15 Wall. 111; *Hylton* v. *United States*, 3 Dall. 171.

While economically the incidence of the present tax is upon the yacht itself, its legal incidence is upon the privilege of using, and whether this be called a tax upon consumption, potential use, or capacity for use, it is indirect in the constitutional sense. *Knowlton* v. *Moore*, 178 U. S. 81, 83; *Missouri &c. Ry. Co.* v. *United States*, 231 U. S. 112.

The reasonable construction of the act shows that the tax is primarily a revenue measure and secondarily designed to encourage the building of yachts in America, and there would be no object in exempting yachts out of commission.

The privilege of use, as shown by ownership or a charter of more than six months, is the only test of liability imposed by the act.

The tax applies to every foreign-built yacht belonging to a citizen of the United States, though such citizen be domiciled and resident abroad and the yacht has acquired a permanent situs abroad.

The statute is to be construed sensibly and to accomplish the legislative intent. *Johnson* v. *Southern Pacific Co.*, 196 U. S. 17.

The congressional proceedings, however, clearly indicate that Congress understood that the tax would apply to the specific yachts now involved. Cong. Rec., Part V, 61st Cong., 1st sess., p. 4875. See *Eidman* v. *Martinez*, 184 U. S. 591.

Every citizen of the United States comes within the

description. *United States* v. *Chamberlin*, 219 U. S. 263.

In other income statutes there were reasons for naming non-resident citizens. See act of August 5, 1861, 12 Stat. 309; act of June 30, 1864, 13 Stat. 281; Tariff Act of October 3, 1913.

The United States merely asks that the language used be given its plain meaning, and that no words of exception be read into the statute under the guise of construction.

The annual tax is an excise, and is uniform throughout the United States. Geographical uniformity is the only limitation imposed by the Constitution. This limitation being observed, the tax does not amount to deprivation of property without due process of law, even if in its operation it be found intrinsically unequal. And the present tax would be valid, even were the equal protection of the laws clause of the Fourteenth Amendment applicable.

Admittedly, the tax is an excise. *Hylton* v. *United States*, 3 Dall. 171; *Knowlton* v. *Moore*, 178 U. S. 41, 84; *Patton* v. *Brady*, 184 U. S. 608; *McCray* v. *United States*, 195 U. S. 27; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107.

The present tax meets this requirement of geographical uniformity. It operates upon every citizen of the United States owning a foreign-built yacht, wherever such citizen may be found.

The classification of the statute is reasonable within the equal protection of the laws clause of the Fourteenth Amendment. *District of Columbia* v. *Brooke*, 214 U. S. 138; *Second Employers' Liability Cases*, 223 U. S. 1.

As to the scope of the equal protection of the laws clause, see *Citizens' Telephone Co.* v. *Fuller*, 229 U. S. 322; *Mutual Loan Co.* v. *Martell*, 222 U. S. 225; *Metropolis Theater Co.* v. *Chicago*, 228 U. S. 61, 69; *Chicago Dock Co.* v. *Fraley*, 228 U. S. 680, 686.

One assailing the classification must carry the burden

of showing that it does not rest on any reasonable basis, but is essentially arbitrary. *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78; *Barrett* v. *Indiana*, 229 U. S. 26, 30.

A tax law may be adopted to further a specific policy or to accomplish a certain purpose. *Quong Wing* v. *Kirkendall*, 223 U. S. 59.

The classification involved includes all citizens who own or charter foreign-built yachts. Two reasons exist for putting them in a class apart from owners of domestic-built vessels—one a question of revenue, and the other a matter of policy. *Travellers' Ins. Co.* v. *Connecticut*, 185 U. S. 364.

As a matter of policy, Congress desired to develop the shipbuilding industry of the United States.

A classification by which the producer-seller and the purchaser-seller are distinguished is proper. *Am. Sugar Co.* v. *Louisiana*, 179 U. S. 89; *St. John* v. *New York*, 201 U. S. 633; *Adams* v. *Milwaukee*, 228 U. S. 572.

The principle of imposing a duty because of the foreign origin of goods is the foundation of our tariff system. See § 5 of the Tariff Act of 1897, 30 Stat. 205; §§ 3385, 3386, Rev. Stat.

The United States may tax the use of yachts owned by its citizens, even though such citizens are domiciled abroad and their yachts have a foreign situs. *Union Transit Co.* v. *Kentucky*, 199 U. S. 194; *Ayer & Lord* v. *Kentucky*, 202 U. S. 409; *Southern Pacific Co.* v. *Kentucky*. 222 U. S. 63, do not apply.

These decisions have arisen from attempts by a State to tax absent property. The United States, as a nation, is not bound by the same rule, as it is not confined by its territorial limitations in the protection of its citizens and their property. Its protection extends throughout the world. The United States may tax its citizens residing abroad. Acts of June 30, 1864, § 116, 13 Stat. 281;

March 2, 1867, 14 Stat. 477; August 27, 1894, 28 Stat. 553; July 14, 1870, 16 Stat. 257. See *United States* v. *Erie Ry. Co.*, 106 U. S. 330.

Ships are in a class by themselves. A yacht belonging to a citizen of the United States, even though not a vessel of the United States in the sense that it is entitled to registry or enrollment, yet flies the American flag, and is the object of peculiar protection by the United States.

These yachts fly the American flag. *The Conqueror*, 166 U. S. 119.

They are territory of the United States to which our laws extend. Clark & Marshall on Crimes, 2d ed., p. 737; 2 Moore, Int. Law, pp. 256, 266, and see § 272, Penal Code, 35 Stat. 1142.

Treaties have been made with foreign nations permitting the punishment by this country of certain offenses committed on such vessels in foreign ports. *Wildenhus's Case*, 120 U. S. 1, 12.

The protection thus given by the United States to these yachts is as great as if they were entitled to registry or enrollment; and it is conceivable that such a case may arise with respect to one of them as to involve the United States in war with a foreign country.

Additional privileges within the waters of the United States are extended to these yachts. Sections 4225, 4226, Rev. Stat., and see also § 4190, Rev. Stat.

The owner of the yacht is exempt from the payment of the light money. *The Miranda*, 47 Fed. Rep. 815, aff'd 51 Fed. Rep. 523; and see *The Conqueror*, 166 U. S. p. 119; *The Alta*, 136 Fed. Rep. 513.

The right to tax may be supported by analogy to the right of a nation to punish its citizens for crimes committed abroad. Clark & Marshall, Crimes, p. 743; Beale, Crim. Pl. & Pr., p. 2; 2 Moore, Int. Law, 255.

The paragraph of § 37, permitting the owner of any yacht to pay a duty of 35 per cent. *ad valorem* in lieu of the

annual tax, is not unconstitutional, and if so may be sep-
arated from other legal provisions and effect be given to
the latter.

Section 37 is not unconstitutional because it originated
in an amendment first proposed in the Senate. *Flint* v.
*Stone-Tracy Co.*, 220 U. S. p. 143.

A foreign-built yacht is liable to the tax, notwithstand-
ing the treaty of July 3, 1815, with Great Britain.

The court below finds as a fact that under the law of
Great Britain a ship is not a British vessel unless owned
by a subject or corporation of that country. Where the
bill of sale has been recorded with the collector of customs
of a United States port, the yacht has lost her character
as a British vessel and is not within the treaty.

A treaty is repealed by an inconsistent subsequent act
of Congress.

A suit *in personam* lies to recover the duty. *United
States* v. *Chamberlin*, 219 U. S. 250, 258.

The United States is entitled to interest on the several
taxes from the time they became due. *Rochester* v. *Bloss*,
6 L. R. A. (N. S.) 694.

Although a State does not see fit to exert its extraordi-
nary power of imposing heavy penalties, it is none the
less entitled to the ordinary interest upon the tax from the
time it falls due until it is paid. *Young* v. *Godbe*, 15 Wall.
562, 565; *People* v. *New York*, 5 Cowen, 334.

Duties on imported merchandise constitute personal
debts to the United States from the importers and an
action of debt will lie to collect them with interest. *United
States* v. *Lyman*, 1 Mason, 482; *Meredith* v. *United States*,
13 Pet. 486; *Cheang-Kee* v. *United States*, 3 Wall. 320;
*United States* v. *Dodge*, 1 Deady, 124; *United States* v.
*Cobb*, 11 Fed. Rep. 76; *United States* v. *Mexican Int. Ry.
Co.*, 154 Fed. Rep. 519.

It is immaterial that the tax is technically a debt. The
amount is definite, and time of payment fixed and cer-

tain. *Railroad Co.* v. *United States,* 101 U. S. 550; *Litchfield* v. *Webster County,* 101 U. S. 773; *United States* v. *Erie Ry. Co.,* 106 U. S. 327.

Mr. Chief Justice White delivered the opinion of the court.

It is necessary to determine whether these two cases from different courts are not virtually one and to be considered in that aspect.

The United States sued for the amount of a tax with interest. The alleged liability under the statute was challenged and if it existed the statute was alleged to be repugnant to the Constitution of the United States and right to interest was denied. The court held the statute to be constitutional and judgment was awarded for the sum claimed, but the prayer for interest was rejected. Error was prosecuted directly from this court by the defendant and from the Circuit Court of Appeals by the United States, the first because of the constitutional questions and the second because of the disallowance of interest. The Circuit Court of Appeals certified a question concerning the right to recover interest, and the two cases before us consist of the direct writ of error on the one hand and the certificate on the other. Both writs of error when taken were authorized. *Ohio R. R. Comm.* v. *Worthington,* 225 U. S. 101; *Macfadden* v. *United States,* 213 U. S. 288. Our jurisdiction, however, on the direct writ of error is not confined to the constitutional questions, but embraces every issue in the case. *Williamson* v. *United States,* 207 U. S. 425. The Circuit Court of Appeals, however, has no power to ask instructions upon an issue which it has no right to decide and we have no authority to instruct on such a subject or to refuse to decide issues which are properly before us for judgment.

Under these conditions, we think the better practice is,

as regards the controversy as to interest which was taken to the Circuit Court of Appeals by writ of error and in which cases the certificates now before us were drawn, to treat the writ of error from the Circuit Court of Appeals as in substance pending here on a cross-writ by the United States, and as without further orders the record is in such a condition as to enable us to decide the whole case, we proceed to do so.

Section 37 of the Tariff Act of August 5, 1909, c. 6, 36 Stat. 11, 112, provided in part as follows:

"There shall be levied and collected annually on the first day of September by the collector of customs of the district nearest the residence of the managing owner, upon the use of every foreign-built yacht, pleasure-boat or vessel, not used or intended to be used for trade, now or hereafter owned or chartered for more than six months by any citizen or citizens of the United States, a sum equivalent to a tonnage tax of seven dollars per gross ton."

The second paragraph of the provision which we need not quote, gives the right to the owner of any "foreign-built yacht, pleasure-boat or vessel above described" to pay a duty of 35 per cent. *ad valorem* and thus secure an exemption from the tax provided by the first paragraph.

The act went into effect on August 6, 1909, and the collector of the port of New York thereafter made a demand upon C. K. G. Billings, the plaintiff in error, for the payment of $7,644.00, that is, of the sum produced by calculating seven dollars per ton on 1,091.71 tons, the tonnage of the foreign-built yacht Vanadis, owned and controlled by him.

Failing to pay, in January, 1911, the United States sued in the court below to recover the tax. The defendant was alleged to be a citizen of the United States and the suit was averred to have been brought in the district nearest his residence. The ownership and use by him of the pleasure-yacht Vanadis, an English foreign-built vessel,

the levy based upon her tonnage according to the statute of the amount of $7,644, the demand for payment, the failure to pay on the first day of September, 1909, under the statute, were all alleged, and recovery of the tax as well as of interest was prayed. The answer admitted citizenship and the ownership of the yacht and that she was a foreign-built pleasure craft, but set up three distinct defenses, the first, that the vessel was not enrolled, registered, or documented as a vessel of the United States and enjoyed no privileges because she was of that character. It was expressly admitted that "during the year preceding the first day of September, 1909" the said yacht "has been used by the defendant outside of the waters and territorial limits or jurisdiction of the United States from time to time and at various times . . . and was not used for six months during such year within the waters and territorial limits or jurisdiction of the United States or elsewhere."

The second defense expressly averred that the tax imposed by the statute was intended by Congress to be "an annual tax, that it should be prospective and operate only upon the future use of any such foreign-built yacht, pleasure-boat or vessel, and that said annual tax did not accrue and could not be duly levied and collected prior to the first day of September in the year 1910."

The third defense, after fully averring that there were within the United States many pleasure yachts not foreign-built which were in use and whose use was identical with that of a foreign-built yacht like the one which the defendant used, charged that the law imposing the burden sought to be enforced was void because repugnant to the due process clause of the Fifth Amendment. The case was submitted to the court on bill and answer and as we at the outset said, there was a judgment holding that the sum claimed was due by the defendant as an excise or duty upon the use of his yacht and that the act imposing

the tax was not repugnant to the Constitution, but that the Government was not entitled to recover interest.

To avoid if it may be the necessity of determining the constitutional question, we shall first decide what, if any, burden the statute imposes, and then if necessary consider its asserted repugnancy to the Constitution. In view of the requirement that direct taxes be apportioned and assuming as we do assume, that the act before us was adopted by Congress in the light of the ruling in *Pollock* v. *Farmers Loan & Trust Company,* 157 U. S. 429, 158 U. S. 601, it is certain that the tax levied by the provision was intended to be an excise tax upon "the use of every foreign-built yacht, pleasure-boat or vessel . . . now or hereafter owned or chartered for more than six months by any citizen or citizens of the United States." This is not seriously, if at all, disputed in argument, the controversy turning first upon the period when the tax provided for is to take effect and the nature and character of the use which is taxed. These subjects are so interwoven that we consider and dispose of them together.

Was the tax due on the first day of September, 1909, or was it only due on the same day in September, 1910? In view of the positive direction that the tax shall be levied and collected on the first day of September, we can see no escape from the conclusion that the court below was right in holding that it became due on the first day of September after the passage of the act. The word "annually" upon which so much reliance to the contrary is placed, is manifestly used not for the purpose of postponing the time of payment, but rather as provision for continuity; that is, the word but shows the purpose of fixing the annual duty of levying and collecting the tax on the designated day. This becomes quite apparent when it is observed that if the word "annually" be removed, there would be room for the implication that the tax was to be but sporadic and would therefore cease to

be collectible after one payment.  And it is equally clear that the six months clause is concerned not with the period when the tax imposed shall be levied and collected, but addresses itself to the subject-matter upon which the tax is placed; in other words, it qualifies the word "charter" and therefore only indicates when the use of a chartered vessel shall become subject to the duty imposed.  The tax being leviable and collectible, on the first of September in each year after the passage of the act, upon what was it assessed? is the question.  It seems difficult to answer it in clearer terms than does the text of the act when it provides that it shall be upon the use of the yachts with which the provision is concerned.  But it is said to respond in the language of the act leaves the question virtually unanswered, since the extent of the use and its essential period are left wholly undetermined.  But this is a misconception based upon a disregard of the fact that the word "use" in the text is unqualified, from which it results that the recurrence of the tax is annual and depends upon two elements, ownership or charter rights, as specified in the act, and use for any time during the year.  It is to be observed that the provision deals with ownership and distinguishes between ownership and use, since it bases the tax not upon the former but upon the latter.  From this it follows that it is not ownership but the election during the taxing period of the owner to take advantage of one of the elements which are involved in ownership, the right to use which is the subject upon which the statute places the excise duty.  In this view the fact of use, not its extent or its frequency, becomes the test, as distinguished from mere ownership, for that in the statutory sense could exist without use having taken place.  The words of the statute under this construction were used in an every-day sense and not in a technical one: in other words but convey the distinction without reference to nice analysis of the nature of things which is

commonly conceived to exist between ownership and use.
Let it be conceded that the ownership of property includes
the right to use, plainly we think, as use and ownership
are distinguished one from the other in the provision, the
word "use" as there employed means more than the
mere privilege of using which the owner enjoys, and re-
lates to its primary signification, as defined by Webster;
"The act of employing anything or of applying it to one's
service; the state of being so employed or applied." If
the use which arises from the fact of ownership without
more was what the statute proposed, then it is inconceiv-
able why the difference between use and ownership was
marked in the provision and made the basis of the tax
which it imposed. While this construction in this case
leads to the same conclusion as does that which the court
below affixed to the statute, that is, that it taxed the
privilege of use, or, in other words the potentiality of
using involved in ownership, inherently there is this
fundamental difference between the interpretation we
give and that which the lower court adopted, since the
privilege of use is purely passive (or subjective), a right
which necessarily pertains to ownership and must exist
where there is ownership, as one may not obtain ownership
without acquiring the privileges of use which ownership
gives. The other, on the contrary, that is, use in the
statutory sense, although it arises from ownership, is
active (objective), that is, it is the outward and distinct
exercise of a right which ownership confers but which
would not necessarily be exerted by the mere fact of owner-
ship. The contention that inequality must be the result
from making the tax depend upon mere use without
reference to the extent of its duration, addresses itself
not to the question of power, and is therefore beyond the
scope of judicial cognizance. But it is to be observed that
it may well have been that the character of the property
with which the statute deals and the mere element of

caprice as to its use and the uncertainties of the subject led to the fact of making the use alone the criterion as the wiser and juster method of operating equally upon all. Again let it be conceded that the causing the tax for the annual period to become due in September, 1909, is to give it in some respects a retroactive effect, such concession does not cause the act to be beyond the power of Congress under the Constitution to adopt. *Flint* v. *Stone-Tracy Company*, 220 U. S. 107 and authorities there cited. While the rule is that statutes should be so construed as to prevent them from operating retroactively, that principle is one of construction and not of reconstruction and therefore does not authorize a judicial reënactment by interpretation of a statute to save it from producing a retroactive effect.

As under the meaning which we thus give the statute the admitted use of the vessel was within its provision and therefore the amount due for excise was rightfully imposed and under our interpretation was due when demanded, we must consider whether the asserted repugnancy of the statute to the Constitution is well founded.

It has been conclusively determined that the requirement of uniformity which the Constitution imposes upon Congress in the levy of excise taxes is not an intrinsic uniformity, but merely a geographical one. *Flint* v. *Stone-Tracy Company*, 220 U. S. 107; *McCray* v. *United States*, 195 U. S. 27; *Knowlton* v. *Moore*, 178 U. S. 41. It is also settled beyond dispute that the Constitution is not self-destructive. In other words, that the powers which it confers on the one hand it does not immediately take away on the other; that is to say, that the authority to tax which is given in express terms is not limited or restricted by the subsequent provisions of the Constitution or the amendments thereto, especially by the due process clause of the Fifth Amendment. *McCray* v. *United States*, 195 U. S. 27 and authorities there cited.

Nor is there anything in *Carroll* v. *Greenwich Insurance Company*, 199 U. S. 401, or *Twining* v. *New Jersey*, 211 U. S. 78, which in the remotest degree nullifies or restricts the principle thus stated. Indeed it is apparent, if the suggestion as to the meaning of those cases were assented to, it would result in rendering the Constitution unconstitutional. This certainly was the view entertained by the pleader when the answer in the case was prepared, since the sole attack on the constitutionality of the statute was based upon the assertion that it was repugnant to the due process clause of the Fifth Amendment. And such also is the line of the argument at bar where the fundamental rights secured by the Fifth Amendment are constantly referred to as the basis upon which the unconstitutionality of the statute is urged. Is there foundation for this claim under the Fifth Amendment? is then the issue, and that of course requires a statement of the grievances which it is asserted result from upholding the tax. They all come to this, that to impose a burden in the shape of a tax upon the use of a foreign-built yacht when a like tax is not imposed on the use of a domestic yacht under similar circumstances is so beyond the power of classification, so abhorrent to the sense of justice, and so repugnant to the conceptions of free government as to be void even in the absence of express constitutional limitation. We do not stop to point out the obvious unsoundness of the contentions, nor indeed to direct attention to the self-evident demonstration of their want of merit even from the point of view of the power to classify, since the difference between things domestic and things foreign and their use are apparent on the face of things and are expressly manifested by the text of the Constitution. We say we do not stop to do these things because in any event we are of opinion the conclusion cannot be escaped that the propositions, each and all of them, whatever may be their form of expression, are in substance and effect but an

assertion that the tax which the statute imposes is void because of a want of intrinsic uniformity, and therefore all the contentions are adversely disposed of by the previous decisions of this court on that subject. That which is settled beyond dispute may not be disregarded and be brought into the realm of that which is controvertible and questionable by the mere garb in which propositions are clothed.

Was the Government entitled to interest? is then the remaining question which we must decide in view of the purpose which we at the outset expressed of treating the United States as here present and urging its right to interest on a cross-writ of error. The cyclopedias and text-books state the doctrine to be that in the absence of a statute expressly so directing, taxes bear no interest. The principle is thus announced in 37 Cyc., p. 1165: "Delinquent taxes do not bear interest unless it is expressly so provided by statute. But it is competent for the legislature to prescribe the payment of interest as a penalty for delay in the payment of taxes and to regulate its rate. This, however, can be effected only by an act plainly manifesting the legislative intention as to the right to recover interest, its amount, and the date from which it shall begin, the latter being ordinarily the time when the assessment is complete and the taxes become payable." Cooley on Taxation, p. 17; Sedgwick on Damages (9th ed.), § 332; Sutherland (3d ed.), § 337; Black on Tax Titles (2d ed.), § 236, and see note in 6 L. R. A. (N. S.), p. 694. And the statement of the text is borne out by the decided cases in nearly all of the state courts of last resort. On the other hand, the Government relies upon four cases in this court where interest was allowed as a matter of course on taxes due the United States. *Cheang-Kee* v. *United States*, 3 Wall. 320; *Railroad Co.* v. *United States*, 101 U. S. 543; *Litchfield* v. *County of Webster*, 101 U. S. 773; *United States* v. *Erie Railway Company*, 106

U. S. 327. We say as a matter of course because in the cases referred to, the subject was not discussed and the liability for interest was practically admitted. The Government also relies on a careful and clear opinion by Maxey, Judge, in the Circuit Court for the Western District of Texas, holding that interest was due to the United States on customs duties. *United States* v. *Mexican &c. R. Co.*, 154 Fed. Rep. 519. Whether the practice applied in the previous decisions of this court should be now followed or the theory established by the state cases adopted and made the rule as to taxes due the United States, is therefore the question. Its solution must depend not upon the mere authority of the state cases, but upon the conclusiveness of the principles upon which such cases rest and their concurrence with the principles by which interest is allowed in the courts of the United States, considerations which require us to determine the nature of the duty which arises from the liability for a tax imposed by the United States, not only inherently but as well from the practice which has obtained in the past in the enforcement of the law of the United States and the implication of legislative sanction, if any, to such practice which may have arisen. It would serve no purpose to refer to the abhorrence which obtained in early times concerning the payment of interest and the evolution by which the legitimate character of interest was gradually understood and it came to be recognized that its payment was, as a general principle, but the compensation due for the use of money or that its allowance was merely for damages caused by delay in discharging a duty and therefore in default on a contract to pay money even without express legislation so directing, interest would be allowed. The subject was explained in *National Bank* v. *Mechanics National Bank*, 94 U. S. 437 and was reviewed in *Reid* v. *Rensselaer Glass Factory*, 3 Cow. 393, 5 Cow. 587. To avoid prolixity we do not review the

state cases as to non-liability for interest on default for taxes but content ourselves with stating that we think it is apparent that the conclusion which they sustain, leaving aside minor differences rests upon two fundamental propositions: First the necessity for an express statute providing for interest except in cases of contract, and second, that even where there is a statute providing for interest on all debts, such statute is not applicable to taxes because they are not debts and therefore must be enforced alone by virtue of express legislative penalties, except where a provision exists giving *eo nomine* interest on taxes. But both of these propositions are in conflict with the settled doctrine established by the decision of this court. Thus, as to the necessity for a statute it was long ago here decided in view of the true conception of interest, that a statute was not necessary to compel its payment where in accordance with the principles of equity and justice in the enforcement of an obligation, interest should be allowed. *Young* v. *Godbe*, 15 Wall. 562, 565:

"It is said there is no law in the Territory of Utah prescribing a rate of interest in transactions like the one in controversy in this suit, and that, therefore, no interest can be recovered. But this result does not follow. If there is no statute on the subject, interest will be allowed by way of damages for unreasonably withholding payment of an overdue account. The rate must be reasonable, and conform to the custom which obtains in the community in dealings of this character."

And the decisions of this court have often since exemplified the principle by considering the question of the responsibility for interest from the point of view of reason and justice even though no express statute existed for compelling this payment. So also as to the nature and character of the obligation to pay taxes. As long ago as *Meredith* v. *United States*, 13 Peters, 486, it was decided, the court speaking by Mr. Justice Story (p. 493):

"It appears to us clear upon principle, as well as upon the obvious import of the provisions of the various acts of Congress on this subject, that the duties due upon all goods imported constitute a personal debt due to the United States from the importer. . . ."

Again in *United States* v. *Chamberlin*, 219 U. S. 250, the nature and character of an obligation to pay a stamp duty was considered, and the right to collect it by action of debt was passed upon and it was held that the obligation to pay was a debt and that it could be enforced by suit in the absence of an exclusive remedy created by the statute by which the obligation was imposed. In the course of the opinion, various decisions of this court recognizing the right of the United States to enforce internal revenue duties by suit were referred to and the statute to the same end was cited and its application to the case in hand was pointed out upon grounds which in reason may well be said to cause the statute to be applicable to the case here before us. In addition, in repeated adjudications in this court it has been settled that in a suit to recover taxes which have been illegally assessed interest would be allowed against the official although the real responsibility was on the Government. The concluded doctrine on this subject was thus stated in a recent case after referring to the exemption of the United States from liability for interest (*National Volunteer Home* v. *Parrish*, 229 U. S. 494, 496):

"On the contrary, in suits against collectors to recover moneys illegally exacted as taxes and paid under protest the settled rule is, that interest is recoverable without any statute to that effect, and this although the judgment is not to be paid by the collector but directly from the Treasury. *Erskine* v. *Van Arsdale*, 15 Wall. 75; *Redfield* v. *Bartels*, 139 U. S. 694."

The conflict between the systems is pronounced and fundamental. In the one, the state rule, except as to

contract, no interest without statute; in the United States rule,, interest in all cases where equitably due unless forbidden by statute. In one no suit for taxes as a debt without express statutory authority, in the other the right to sue for taxes as for a debt in every case where not prohibited by statute.

From this review it results that the doctrine as to nonliability to pay interest for taxes which have become due which prevails in the state courts is absolutely in conflict with the doctrine applied to the same subject in this court and cannot now be made the rule without repudiating settled principles which have been here applied for many years in various aspects and without in effect disregarding the sanction either expressly or impliedly given by Congress to such rules. From this it follows that although in the cases in this court to which we at the outset made reference which enforced the liability for interest and which are here controlling if they be not now overruled, there was no controversy as to the liability for interest, this was presumably because the matter was deemed not disputable as the direct result of the then settled doctrine that interest could be recovered by the United States on a default in payment of import duties. Under this condition we can see no ground for departing from the rule which the cases enforced, and we are therefore constrained to the conclusion that the court below was wrong in rejecting the prayer of the Government for interest and its action in that respect must be reversed while in others it must be affirmed.

*Modified and affirmed.*