J. F. CARLSTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33118. Promulgated February 18, 1931.

*A. W. Helvern, Esq.,* and *J. Paul Miller, Esq.,* for the petitioner.
*John D. Foley, Esq.,* for the respondent.

OPINION.

MARQUETTE: This proceeding involves the petitioner's tax liability for the year 1923 but, in order correctly to determine that liability we must also inquire into certain phases of the petitioner's gross income and deductions for the years 1921 and 1922, for the reason that he claims that he sustained in each of those years a " net loss " within the meaning of section 204 of the Revenue Act of 1921, which should be deducted from his net income for 1923, thus reducing the amount of net income for 1923 subject to tax.

The petitioner in his amended return for 1921, which is the only return for that year that has been brought to our attention, reported a net loss of $7,798.71. In his return for 1923 he deducted from net income the amount of $12,644.51 as a " net loss " sustained in 1921. How he arrived at the latter amount we are not advised. However, in computing his claimed " net loss " for 1921, whether it be $7,798.71 or $12,644.51, he deducted, as a debt ascertained to have become worthless and charged off in that year, $105,575.15, representing the amount of Weissbaum & Company's notes which he took up with his own notes, as set forth in the findings of fact. The position of the respondent is: (1) That the petitioner is not entitled to any deduction either in 1921, when he took up the Weissbaum notes he had guaranteed, or in 1922, when he paid his own notes; and (2) that even if he is entitled to a deduction in 1921 or 1922 on account of the Weissbaum notes, any loss for either of those years, in so far as it is due to said deduction, is not a " net loss " within the meaning of section 204 of the Revenue Act of 1921, because the Weissbaum transaction was not in connection with any trade or business regularly carried on by the petitioner.

It is our opinion that the first contention of the respondent is well taken, and that it is therefore unnecessary to discuss whether the Weissbaum transaction was entered into by the petitioner in connection with any trade or business regularly carried on by him. The facts are that the petitioner, in 1920 or 1921, guaranteed the notes of Weissbaum & Company at the Anglo & London Paris National Bank, in the amount of $105,575.15; that in 1921, Weissbaum & Company being unable to meet their obligations, the petitioner borrowed the amount of $105,575.15 from the Anglo & London Paris National Bank, giving his own note therefor and taking up the Weissbaum notes that he had guaranteed. He paid his own notes in 1922. The evidence also shows that the petitioner and the

Central National Bank, of which he was president and which had also advanced money to Weissbaum & Company, did not regard the transaction as having necessarily resulted in a loss and that they "stepped into the shoes" of Weissbaum & Company and prosecuted an action against the Robert Dollar Company, which resulted in the recovery of a large part of the amount the bank and the petitioner had advanced to, or paid for Weissbaum & Company, the petitioner's share of the amount so recovered being at least $60,000. We are unable to perceive how the petitioner could have a worthless debt against Weissbaum & Company, and at the same time as a creditor of Weissbaum & Company and subrogated to its rights against the Robert Dollar Company, have what he must have considered a good and valid claim against that company. In view of the situation it is clear that the petitioner was not entitled to any deduction in 1921 and 1922 on account of the Weissbaum notes, and it follows that he did not have a "net loss" in 1921.

The respondent has determined that the petitioner sustained a "net loss" for 1922 in the amount of $741.85, which he has deducted in computing the petitioner's taxable net income for 1923. The petitioner contends, however, that the respondent erred in including in his net income for 1922 the amount of $1,250 credited on his stock subscription by the Central Savings Bank as described in the findings of fact, and in allowing as a deduction only $891.90 of interest payments amounting to $15,755.66 made by him to C. J. Berry in 1922.

The question raised with respect to the transfer from surplus to capital stock account by the Central Savings Bank is also presented with respect to the petitioner's income for 1923, and what we say in regard to this issue as to 1922 will also apply to the latter year. The facts are that the petitioner and the other stockholders of the Central Savings Bank had subscribed for their stock many years prior to 1916. No payments had been made by any of the stockholders on their stock subsequent to the year 1916, and on June 7, 1922, the capital stock outstanding was only 60 per cent paid up. On that date the board of directors, by resolution duly adopted, authorized and directed the cashier to charge the surplus account the amount of $100,000 and to credit same to the capital stock account. In the year 1923 the amount of $100,000 was transferred from surplus account to the capital stock account in the same manner. The petitioner was the owner of 125 shares of the capital stock of the Central Savings Bank, and the effect of each one of these transfers was to reduce the amount of his unpaid subscription in the amount of $10 per share, or $1,250. The question presented is whether the petitioner received taxable income as the result of these transfers from surplus to capital stock account. This identical ques-

tion was decided by the District Court for the Northern District of California in *Michaels* v. *McLaughlin*, 20 Fed. (2d) 959. The Court, in holding that transfers from surplus to capital account, made under circumstances in all essential respects the same as those found herein, did not result in income to the stockholders, said:

What, then, was the effect of the resolution debiting the profit and loss account with $193,240, and crediting the capital account with the same amount, so that the capital stock account should equal the par value of the stock issued? In determining this question the court will look through the form of the corporate transaction to the substance. *Eisner* v. *Macomber*, 252 U. S. 189, 211, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. So viewed, the transaction now before me appears to be one which does not give rise to taxable income. It complies with each of the three tests commonly applied by the Supreme Court in dealing with nontaxable stock dividends. *Towne* v. *Eisner*, 245 U. S. 418, 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918 D. 254; *Eisner* v. *Macomber*, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; *Billings* v. *U. S.*, 232 U. S. 261, 34 S. Ct. 421, 52 L. Ed. 596.

The stockholders have the same value before and after the transfer of the authorized amount from the profit and loss account to the capital stock account. The proportional interest of each stockholder remains the same. If the stockholders had surrendered 20 per cent. of their stock and received a 25 per cent, stock dividend, the transaction would clearly have had this effect, and would have been a stock dividend without question. The situation is in its effect the same, where there was no surrender of old shares, no issue of additional shares. *Towne* v. *Eisner*, 245 U. S, 418; 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918 D. 254. The fact that the original shares evidenced the increase in the capital stock account created by the transfer from the surplus accumulated by the corporation is immaterial. The original investment of the stockholder and its accumulations still remain the property of the company and subject to the hazards of the business. He holds the same proportion of that property, but has received nothing for his individual use. The incidental extinction of the contingent and, in view of the existing surplus, remote liability to pay $20 a share in the event of formal call, cannot be regarded as an individual gain subject to tax. *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, 338, S. Ct. 540, 62 L. Ed. 1142.

The stockholder has received no present tangible gain by reason of the increase of the capital stock account, but has in fact suffered a postponement of realization of profit. The portion of the accumulated surplus transferred to the capital stock account is no longer available for distribution to the stockholders. It is retained for corporate purposes. *Eisner* v. *Macomber*, 252 U. S. 189, 211, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570.

We agree with both the reasoning and conclusion of the Court in *Michaels* v. *McLaughlin*, *supra*, and accordingly hold that the petitioner did not realize any income in 1922 or 1923 as a result of the transfers from surplus to capital stock account made by the Central Savings Bank.

The only other question presented is whether the petitioner is entitled to a further deduction for 1922 on account of interest claimed by him to have been paid in that year to one C. J. Berry. The respondent's contention is that only $891.90 of the amount claimed

by the petitioner was paid as interest. The evidence establishes to our satisfaction that the petitioner paid to Berry in 1922 interest in the amount of $15,755.66, and that he is entitled to a deduction in that amount for 1922. The effect of the additional deduction will be to increase the statutory " net loss " for 1922 heretofore allowed by the respondent.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*