## In re PAYNE.
### No. 3560.

District Court, N. D. Texas, Dallas Division.
May 9, 1935.

rental value was determined to be 6 per cent. upon the amount of $2,000, which was fixed in round numbers, as the land value. The 6 per cent. amounted to $120 per year.

The order provided that this $2,000 shall be payable within five years, that is to say, on the 26th of February, 1940; the interest thereon to be paid semiannually. That the land is hereby "freed and cleared of any other or further lien in favor of the Dallas Joint Stock Land Bank, of Dallas, under said mortgage or deed of trust." It also provided that the bankrupt should pay the back taxes on the land in the amount of $152.11, and he was given until April 1, 1936, within which to do so. That the bankrupt should also pay all other taxes as they accrue before they become delinquent. "That if within the five years the bankrupt offers to pay the amount of $2,000.00 to the Dallas Joint Stock Land Bank, and if that institution refuses to accept the same then that amount shall be paid into court according to clause 7 of subdivision (s) of section 75 [11 USCA § 203 (s) (7)]." The same provision is made with reference to the payment of interest as to its deposit upon refusal.

There were some other provisions in the order with reference to some insignificant personal property not necessary to mention here.

The land bank contends that the order entered by the referee is erroneous because section 75 of the act, as amended, is unconstitutional, in that: (a) It is in contravention of the Tenth Amendment to the Constitution of the United States and article 1, § 8, of the Constitution, since said act does not deal with the subject of bankruptcies or with any other legislative power over which the congress is given authority; (b) it is in contravention of the provisions of the Fifth Amendment to the National Constitution because the act not only impairs but destroys the property rights held by mortgage creditors, and "deprives such creditors of their property without due process of law."

A further objection to the order is made on the ground that the property is the homestead of the bankrupt and so set aside to him as such by the referee, and is not, therefore, within the jurisdiction of the court. Complaint is also made to the "reasonable annual rental" as found, and it is claimed that it is arbitrary and unreasonable.

Renfro & McCombs, of Dallas, Tex., for the certificate.

H. O. Norwood, of Greenville, Tex., for bankrupt.

ATWELL, District Judge.

The bankrupt has proceeded in accordance with section 75 of the Bankruptcy Act, as amended, 11 USCA § 203. His homestead consists of 144 acres of land. On this he owes the Dallas Joint Stock Land Bank $5,500. Appraisers, duly appointed, fixed the "fair and reasonable value of the land, not necessarily market value," $1,971. The treatment of the first claim of unconstitutionality, as set forth in subdivision

(a), above, shown in Louisville Joint Stock Land Bank v. Radford (C. C. A.) 74 F.(2d) 576, seems to be well reasoned and is conclusive against the criticism. See, also, Paine et al. v. Capitol Freehold Land and Trust Company et al., by this court, 8 F. Supp. 500.

It may be conceded that the act is crudely, and in some respects disappointingly, drawn. John Hanna of the Columbia Law School, in an article in the American Bar Association Journal said that: "The legislative history of section 75 both in its original and its present form explains why the section as a whole is one of the worst recent examples of draftsmanship in Federal legislation." The same authority, however, concedes that if it is not constitutional it is because of the want of due process under the Fifth Amendment. The Congress has a constitutional right to pass "uniform laws on the subject of bankruptcy." It is too late now, says Mr. Hanna, to argue that bankruptcy legislation is limited by the Constitution to the conception of bankruptcy prevailing when the Constitution was adopted. The Fifth Amendment was born after bankruptcy power had been given to Congress, and "presumably limits that power."

"The mortgagee has a legal interest in land conveyed as security. In many states the mortgagee is the legal owner. * * * The act does deprive secured creditors of property. It does so in part at least only for a particular class of debtors. If the theory is that the operation is for the public good, it is the taking of property without just compensation."

To thoughts such as those the Circuit Court of Appeals for the Sixth Circuit, Louisville Joint Stock Land Bank v. Radford, 74 F.(2d) 576, 580, in affirming Judge Dawson, In re Radford (D. C.) 8 F. Supp. 489, said: "We come to the contention that the assailed statute offends against the due process clause of the Fifth Amendment. Conceding that the due process clause limits the power or the manner of its exercise under the bankruptcy clause, it nevertheless does not vitiate it. The Constitution is not self-destructive—'the powers which it confers on one hand it does not immediately take away on the other.'" Billings v. U. S., 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596; McCray v. U. S., 195 U. S. 27, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561.

It cannot be assumed, presumed, nor found in the fundamental instrument of our national government, that a national emergency creates power, but it may cause a searching for unused power and certainly would require that there shall be no ignoring of its existence when validity is to be determined by the reasonableness of the use of existing power. Louisville Joint Stock Land Bank v. Radford, supra; Block v. Hirsh, 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165; Home Building & Loan Association v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481.

Some of the complaints that were made in the Louisville Case have no foundation in the present case. The order seems to cover some matters that were objectionable there.

The great assault that is made upon the righteous judicial mind is that through the "legerdemain," or, if one prefers the milder word, "process," of appraisal, a debt, secured, and which is the property of the citizen, is deliberately cut in less than half. The bankrupt owed the bank $5,500 which was secured by this land. The machinery provided for in this section authorized the whittling down of this just obligation to $2,000. It is not a case of the land being sold and the proceeds being turned over to the creditor. It is not a case of encumbered property bringing less at forced sale than the debt. That may be expected. It is a case where the law steps in and says to the creditor, "You cannot have the land and you cannot have the money." The debtor is allowed to retain the land and to pay a reasonable percentage of the reduced figure of the debt as rental. This he may do for five years, and if at the expiration of that time he is unable to go forward, the creditor may then have, in all probability, what he should have had many years before.

This status is defended on the ground that it is in the constitutional field of bankruptcy and, if not permitted, would result in the displacement of a multitude of farm debtors who must have some place to reside.

It is suggested that public welfare is sought to be conserved and that such welfare transcends the interest of the affected class. That it is the policy of the United States to prevent the development of a great class of dependent tenant farmers like the peasantry of European states, and that this solicitude and conservation is shown in such cases as Oregon & California Railroad Company v. U. S., 238 U. S. 393, 35 S. Ct. 908, 59 L. Ed. 1360. That case dealt with the restriction of sales in quantity and price to actual settlers. Likewise, it dealt with public domain and not with private prop-

erty. It would be another contest if the question here were the right of the national government to furnish homes to its individual citizens. This law seeks to take from one citizen and give to another citizen for the good of the nation. In simpler and plainer words, to take private property for public purposes, without compensation. Of course, that is not permitted.

This court has a sensitive solicitude for the welfare of the country citizen and appreciates the end that was sought to be accomplished by this amendment to the Bankruptcy Act; but it seems to me that a due consideration of the rights of all the citizens —the creditor as well as the debtor class— calls for a full recognition of our fundamental law and the purpose of the constitutional provision authorizing bankruptcy legislation. The debtor who is oppressed and burdened by debts and obligations that he shall not be able to liquidate may surrender his residue and be relieved. His obligation as a citizen is thus satisfied because that is a risk which the creditor takes. All debtors do not prosper; trade and commerce with men result in both failures and successes. A debtor so relieved may go forward unabashed for other and newer efforts and hoped for victories. But the debtor who makes solemn obligations with reference to property which he owns and secures advances on the strength of that property may not, with the same cleanliness and courage, seek to keep that property and be relieved of the obligation against it. It is a complete striking down of private contract and a lack of due process that is without apology.

It would be much more honorable and lawful, if all of the people were to say, "let us join in presenting the homeless debtor with a place in and upon which he may reside, because it is not well that the American citizen should be homeless," instead of compelling the creditor to furnish it.

▮ I think the referee was correct in his holding that the act permitted the procedure followed, namely, the setting aside to the debtor of his exemptions and then the fixing of the value by appraisal, because clause 2 of subdivision (s) of section 75, 11 USCA § 203 (s) (2), says that, "the referee shall issue an order setting aside to such debtor his exemptions as prescribed by the State law, subject to any existing mortgages or liens upon any such exemptions to an amount equal to the value, as fixed by the appraisal, of the value of such exempt property as is covered by any mortgage or lien. * * *"

I believe that Judge Kennerly, in Zapalac v. White (D. C.) 9 F. Supp. 419, 27 A. B. R. (N. S.) 64, was in error when he said that the jurisdiction of the bankruptcy court was limited to setting aside the property, under this statute.

Such a construction of the act would rob it of the very thing that was intended, namely, the power to save the property of the debtor. If the debtor had no property except his homestead, which is frequently the case with farmers, in homestead states, then the act would be clearly unconstitutional because of a failure to be uniform, since it would apply in states where there are no homestead exemptions and would not apply in states where there are homestead exemptions. Lockwood v. Exchange Bank, 190 U. S. 294, 23 S. Ct. 751, 47 L. Ed. 1061, is not in point.

▮ It follows that the prayer of the Dallas Joint Stock Land Bank must be answered by declaring the act, with reference to the particular feature here criticized, unconstitutional.

▮ The trial court should tread cautiously in declaring an act of the Congress unconstitutional. That judicial function should be performed by the higher courts; but when the trial court has no doubt of unconstitutionality, it is clearly the duty to so say. The voluntary conciliation provisions of the preceding part of this section are highly salutary, and are not disturbed by this holding. It is only such portion of subdivision (s) as must fall by the striking down of the confiscatory appraisal features that are involved. Whether a portion may be disturbed and a portion retained, in the absence of a divisibility clause, may be questionable. A court is not permitted to strike such portions of an act as will leave it a cripple. The reasoning in Sage v. Baldwin, 55 F.(2d) 968, by this court, is thought to mark the proper course in this particular field.

An order will be drawn allowing the proof of the bank's claim in the full amount and its foreclosure in the method outlined in the general act.