## KENTUCKY JOCKEY CLUB v. LUCAS, Collector of Internal Revenue.

(District Court, W. D. Kentucky. July 29, 1926.)

1. Internal revenue ⬅25—Deficiency assessment of income, war profits, and excess profits taxes bears interest from date when due (Revenue Act 1921, §§ 250 [b], 336 [Comp. St. §§ 6336⅛tt, 6336 7/16o]).

Under Revenue Act 1921, §§ 250 (b), 336 (Comp. St. §§ 6336⅛tt, 6336 7/16o), where there is a deficiency assessment against a taxpayer on account of income, war profits, or excess profits taxes, the taxpayer must pay interest on the deficiency at the rate of one-half of 1 per cent. per month from the day the tax was due.

2. Internal revenue ⬅7(4), 9(27)—Revenue Act 1921 applies to income, war profits, and excess profits taxes due for fiscal year ending in 1921 (Revenue Act 1921, §§ 200, 300 [Comp. St. §§ 6336⅛a, 6336 7/16a]).

Under the provisions of Revenue Act 1921, §§ 200, 300 (Comp. St. §§ 6336⅛a, 6336 7/16a), that act applies to income, war profits, and ex-

cess profits taxes due from a corporation for its fiscal year ending in 1921.

**3. Internal revenue ⟶7(4)—Income earned before passage of revenue act may be taxable thereunder.**

It does not follow from the fact that income of a corporation was earned before the passage of a revenue act that it may not be taxable thereunder rather than under the law in force when the income accrued.

At Law. Action by the Kentucky Jockey Club against Robert H. Lucas, Collector of Internal Revenue of the District of Kentucky. Judgment for defendant.

M. L. Galvin, of Covington, Ky., and A. J. Carroll, of Louisville, Ky., for plaintiff.

W. S. Ball, U. S. Dist. Atty., of Louisville, Ky., and A. W. Gregg, General Counsel Bureau of Internal Revenue, and Ralph E. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

DAWSON, District Judge. Plaintiff, a Kentucky corporation, for federal taxation purposes uses a fiscal year beginning March 1st of each calendar year and ending on the last day of the succeeding February. Therefore, for its taxable year extending from March 1, 1920, to February 28, 1921, its return was due on May 15, 1921. On May 14, 1921, it made its return, showing that it owed a total of income tax, war profits, and excess profits tax, of $413,557.19, and electing to pay same in quarterly installments, as authorized by law. Subsequent to the filing of this return, the Commissioner of Internal Revenue caused to be made a field audit of the books and records of the plaintiff, and as a result thereof reached the conclusion that the tax actually due by the plaintiff was $639,018.91, instead of the amount fixed in plaintiff's return, and so notified the plaintiff on the 28th day of October, 1921. Plaintiff objected to this action of the Commissioner, and, after a protracted investigation, including a second field audit and hearings, the Commissioner of Internal Revenue finally fixed the tax at $637,764.59, and on February 17, 1925, notified the plaintiff of his intention to fix the tax at this amount. Plaintiff accepted the findings of the Commissioner and agreed that an immediate assessment might be made of the deficiency in the tax, amounting to $224,207.-40. The assessment was made final, and on April 8, 1925, demand in writing was made upon the plaintiff that it pay the deficiency, and the further sum of $47,083.55, representing interest on the deficiency at the rate of one-half per cent. per month from the time this deficiency should have been paid under the installment plan as authorized by law. Plaintiff paid the deficiency tax in full, but protested against the assessment of the interest item. After a hearing, the Commissioner of Internal Revenue overruled the protest and directed the collection of the interest charge, which on April 29, 1925, was paid by the plaintiff under protest. Thereafter claim for a refund of this interest item was regularly made, and denied by the Commissioner. This suit was then brought to recover the sum of $47,083.55, with interest from the date of its payment. A jury has been waived, and separate findings of fact and conclusions of law requested.

It is admitted that the plaintiff made no understatement of the tax in its return, with intent to defraud the government; that the time of the payment of the tax was not postponed at the request of the taxpayer, and there is no evidence of negligence of the taxpayer in making the return, other than such inference as might be drawn from the fact that the plaintiff accepted and paid, without protest, the deficiency assessment as finally made by the Commissioner. In support of its contention that the government was without right to collect the interest item, plaintiff points to the admitted fact that its total gross income for the taxable year involved in this case (plaintiff's fiscal year) was $2,152,422.-83, and that with the exception of $1,084, it was all earned between March 1, 1920, and December 31, 1920, and insists that therefore the right of the government to collect interest on any deficiency in tax due it for the taxable year in question, except possibly as to the $1,084, earned in the months of January and February, 1921, must depend upon the provisions of the Revenue Act of 1918 (40 Stat. 1057), rather than upon the provisions of the Revenue Act of 1921 (42 Stat. 227), which became a law on November 23, 1921, and which by its terms was effective as of January 1, 1921, and that, inasmuch as the Revenue Act of 1918 made no provision for the imposition of interest on a deficiency assessment such as this one, the government was without right to impose the interest charge in question on any part of the deficiency arising out of income earned in the calendar year 1920.

The government, on the other hand, insists that the Revenue Act of 1921 in express terms covered the return made by the plaintiff on May 14, 1921, and that the question of interest on any deficiency tax assessed on such return is controlled by that act, rather than by the act of 1918. It is further contended by the government that, even if it should be

held that the act of 1921 does not apply on the question of the interest involved in this case, the government had the right to impose the interest charge, notwithstanding the silence of the act of 1918 on this question. In support of this latter contention, the government relies upon the case of Billings v. United States, 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596, and the cases therein cited, to the effect that the United States government has the right in all cases, unless expressly forbidden by statute, to collect interest on past-due taxes, where the imposition of the interest charge is equitable and just.

[1] That portion of the Revenue Act of 1921 dealing with income taxes is found in title 2 thereof, which extends from section 200 to section 263, both inclusive (Comp. St. §§ 6336⅛a–6336⅛zzz). Section 263 reads as follows:

"Sec. 263. That this title shall take effect as of January 1, 1921."

That portion of the act which deals with war profits and excess profits taxes is found in title 3 thereof, which extends from section 300 to section 338, both inclusive (Comp. St. §§ 6336⅞₁₆a–6336⅞₁₆q). Section 338 provides:

"Sec. 338. That this title shall take effect as of January 1, 1921."

By virtue of these retroactive provisions, the Revenue Act of 1921, in so far as it dealt with income taxation and war profits and excess profits taxation, became effective as of a date prior to the close of plaintiff's current fiscal year.

Section 250(b), which is a part of title 2 of the act (Comp. St. § 6336⅛tt), reads in part as follows:

"(b) As soon as practicable after the return is filed, the Commissioner shall examine it. If it then appears that the correct amount of the tax is greater or less than that shown in the return, the installments shall be recomputed. If the amount already paid exceeds that which should have been paid on the basis of the installments as recomputed, the excess so paid shall be credited against the subsequent installments; and if the amount already paid exceeds the correct amount of the tax, the excess shall be credited or refunded to the taxpayer in accordance with the provisions of section 252.

"If the amount already paid is less than that which should have been paid, the difference, to the extent not covered by any credits due to the taxpayer under section 252 (hereinafter called 'deficiency'), together with interest thereon at the rate of one-half of 1 per cent. per month from the time the tax was due (or, if paid on the installment basis, on the deficiency of each installment from the time the installment was due), shall be paid upon notice and demand by the collector."

Section 336, which is a part of title 3 of the act (Comp. St. § 6336⅞₁₆o), provides:

"Sec. 336. That every corporation, not exempt under section 304, shall make a return for the purposes of this title. Such return shall be made, and the taxes imposed by this title shall be paid, at the same times and places, in the same manner, and subject to the same conditions, as is provided in the case of returns and payment of income tax by corporations for the purposes of title 2, and all the provisions of that title not inapplicable, including penalties, are hereby made applicable to the taxes imposed by this title."

From these provisions it seems obvious that, where there is a deficiency assessment against a taxpayer, on account of income tax and war profits and excess profits tax due under the Revenue Act of 1921, the taxpayer must pay interest on such deficiency at the rate of one-half per cent. per month from the day the tax was due, or, if paid on the installment plan, on the deficiency of each installment from the time each installment was due, even though the payment of the tax was not postponed at the request of the taxpayer and there was no understatement of the tax in the return, due to the negligence of the taxpayer, or with intent to defraud. Hence, if the act of 1921 applied to plaintiff's return, made on May 14, 1921, for its fiscal year ending February 28, 1921, the government was entitled to collect interest on one-fourth of the deficiency of $224,207.40 from May 15, 1921; on one-fourth thereof from August 15, 1921; on one-fourth thereof from November 15, 1921; and on one-fourth thereof from February 15, 1922.

[2] Now, section 200 (Comp. St. § 6336⅛a), which is a part of title 2, thus defines what shall constitute a taxable year for income tax purposes.

"Sec. 200. That when used in this title—

"(1) The term 'taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under section 212 or section 232. The term 'fiscal year' means an accounting period of twelve months ending on the last day of any month other than December. The first taxable year, to be called the taxable year 1921, shall be the calendar year 1921 or any fiscal year ending during the calendar year 1921."

Section 300 (Comp. St. § 6336⅞₁₆a),

which is a part of title 3, which deals with war profits and excess profits taxes, provides:

"Sec. 300. That when used in this title the terms 'taxable year,' 'fiscal year,' 'personal service corporation,' 'paid or accrued,' and 'dividends' shall have the same meaning as provided for the purposes of income tax in sections 200 and 201."

Plaintiff's fiscal year in question in this case ended in the calendar year 1921. So there is no escaping the conclusion that the assessment and payment of its income tax and war profits and excess profits tax for its taxable year extending from March 1, 1920, to February 28, 1921, were governed by the act of 1921, and that the government properly exacted interest on the deficiency assessment, unless there can be found in the act some other provision, indicating a contrary intention on the part of Congress in cases like the one under consideration.

Counsel for plaintiff insist that this contrary intention of Congress is found in the provisions of subdivision (h) of section 250. Subdivision (h) of section 250 reads as follows:

"(h). The provisions of subdivisions (e), (f) and (g) of this section shall apply to the assessment and collection of taxes which have accrued or may accrue under the Revenue Act of 1917, the Revenue Act of 1918 or this act."

Basing their argument on the principle of expressio unius est exclusio alterius, counsel argue that subdivision (h), in expressly designating certain portions of section 250 which should apply to the assessment and collection of taxes which have accrued or may accrue under the Revenue Act of 1917 (40 Stat. 302) and the Revenue Act of 1918, necessarily excludes all the other provisions of section 250 from applying to the assessment and collection of taxes which have accrued or which may accrue under either of said acts, and that therefore subdivision (b) has no application to taxes due by plaintiff for its taxable year beginning with March 1, 1920, and ending February 28, 1921.

There is at once suggested a very obvious answer to this argument of the plaintiff. It will be observed that by its express terms subdivision (h) makes applicable the provisions of subdivisions (e), (f), and (g) of section 250, not only to the Revenue Acts of 1917 and 1918, but likewise to "this act" (1921). Certainly it could not have been the intention of Congress, by the provisions of subdivision (h), to exclude the application of subdivision (b) to the assessment and collection of taxes accruing under the Revenue Act of 1921; yet

no logical reason can be given for holding that subdivision (h) excludes the operation of subdivision (b) on the assessment and collection of taxes accruing under the Revenue Acts of 1917 and 1918, and does not exclude the operation of that subdivision on taxes accruing under the Revenue Act of 1921.

[3] A more fundamental weakness in this contention of counsel for plaintiff is the assumption that plaintiff's taxes for the period in question accrued under the Revenue Act of 1918. Apparently counsel have fallen into the error of failing to distinguish between the *accrual of plaintiff's income upon which the taxes in question were figured,* and the *accrual of the tax itself.* It is agreed that practically all the *income* for the taxable year accrued to plaintiff in the calendar year 1920, but it does not follow from that fact that its *taxes* accrued in that calendar year, nor that the assessment and collection thereof are controlled by the Revenue Act of 1918. On the contrary, under the express provisions of the Revenue Act of 1921, these taxes accrued under that Act. That law by its express terms makes its income tax and war profits and excess profits tax provisions retroactive to January 1, 1921, as to those taxpayers whose returns are based on the calendar year, and, when sections 263 and 338 (Comp. St. §§ 6336⅛zzz, 6336⁷/₁₆q) are read in connection with sections 200 and 300 of the act, it is manifest that the income tax, war profits and excess profits tax provisions are retroactive to the beginning of the fiscal year of those taxpayers whose fiscal year ended in the calendar year 1921.

In reaching this conclusion, the court is not unmindful of the generally recognized rule that taxing statutes will not be construed to be retroactive unless their language clearly impels such construction, but the language of the 1921 act, it seems to the court, is susceptible of no other construction, and it is no longer open to question that federal statutes, imposing income taxes, etc., may legally be made retroactive and to reach back and tax income and profits earned by the taxpayer prior to the enactment of the law. Billings v. United States, 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596; Brushaber v. Union Pacific R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; Stockdale v. Insurance Co., 87 U. S. (20 Wall.) 323, 22 L. Ed. 348. Indeed, practically all, if not all, of the income tax statutes which have been enacted by Congress in recent years contain retroactive provisions.

For the reasons stated, the court is of opinion that the government had the power,

under the 1921 act, to exact the interest sued for in this case. Plaintiff's petition must therefore be dismissed. This conclusion makes it unnecessary to consider the contention of the government that it had the right to exact the payment of the interest item in question under the act of 1918. That question, therefore, is not passed upon. However, for the purpose of making a complete finding of facts, the court finds that it was the uniform practice of the Treasury Department, in applying the 1918 act, not to exact the payment of interest on deficiency assessments under conditions and circumstances similar to those in this case.

A decree conforming to the views herein expressed, with a separate finding of facts and conclusions of law, may be prepared and presented for entry.