# DIAMOND SHOE CO. v. COMMISSIONER OF INTERNAL REVENUE.
## No. 338.

Circuit Court of Appeals, Second Circuit.

May 12, 1930.

The petitioner is a New York corporation which has been in existence and doing business with its principal office in New York since it was organized in February, 1912, and then took over and continued a business which had been in continuous existence since before the year 1911. This business was that of selling shoes at wholesale, and' had been conducted by an individual who had not manufactured shoes. In July, 1912, the stockholders of the petitioner joined with a practical shoe manufacturer named Rubin in the purchase from a trustee in bankruptcy of a partly dismantled shoe factory in Brockton, Mass., but did not succeed to the trade or business of the former owner of the factory. The purchasers promptly organized a Massachusetts corporation called the Diamond Shoe Company and turned the factory over to it. Some time after January 1, 1914, the exact date of which does not appear, a Delaware corporation having the same name was organized by the same stockholders and succeeded to all of the assets and business of the Massachusetts corporation. For the calendar year 1918, the petitioner filed a consolidated income and profits tax return on the basis of its affiliation with the Delaware corporation, and it is agreed that the two corporations were affiliated within the purview of section 240(a) Revenue Act of 1918, c. 18, 40 Stat. 1057.

The deficiency assessment here involved resulted from the refusal of the Commissioner of Internal Revenue to accept the method used by the petitioner in computing the war profits credit to be allowed. To determine the war profits tax, the parties have no difficulty with the amount of the 1918 income from which this credit is to be deducted. They also agree that the petitioner, or the individual business to which it succeeded, had a net profit in the pre-war period, 1911, 1912, and 1913, as fixed by section 310 of the 1918 act, as follows: In 1911, $26,549.76; in 1912, $22,683.78; and in 1913, $32,351.95. They also agree that the Massachusetts corporation, which was organized in 1912, as above stated, had a net income in that year of $3,610.81 and in 1913 of $41,268.43, and that the credit to be allowed for taxes paid in 1913 is $176.84.

The present dispute arises wholly from the fact that the petitioner has added together its own net income (treating the net income of its predecessor as its own income) for the three pre-war years, then divided that amount by three, and obtained as a result $27,254.11 as its own average pre-war net income; to this it has added what it calls the pre-war average net income of the Massachusetts corporation by taking its income for the year 1913 only, since on this basis the 1912 income should be disregarded, as the Massachusetts corporation was not in existence during the whole of that year (section 310, Revenue Act of 1918) and by adding these two sums together has arrived at $68,522.54 as the average pre-war net income of both corporations to be deducted from the 1918 consolidated net income as the pre-war credit in fixing the taxable sum. In doing this, the petitioner has taken the position that under the law consolidated tax returns for affiliated corporations refer only to the year 1918 and that the pre-war profits credit is to be determined without regard to affiliation if the 1918 affiliated business was carried on during all or any part of the pre-war years by two or more organizations each of which then had a separate identity. This in effect makes no distinction between a consolidation or affiliation taking place during the three pre-war years and the same thing happening after that period when after-affiliated businesses are treated as separate and distinct during the pre-war period as they were in fact.

The Board of Tax Appeals has upheld the Commissioner in the view that corporations affiliated in 1918 shall, if affiliated during the pre-war period, or if their predecessors in business were then affiliated, compute the pre-war credit by taking the average consolidated net pre-war income as the deductible credit and has obtained the amount of the pre-war credit by adding to the petitioner's pre-war net income that of the Massachusetts corporation from the time it was organized and began doing business in 1912 through to the end of 1913 and then taking one-third of the total as the average consolidated pre-war net income. In this way the business of the taxpayer and its affiliated corporation has been treated as a business unit both in 1918 and as extending back through the respective predecessor businesses as a business unit through the entire pre-war period. The deficiency is based on the difference in the result of these two methods.

The Revenue Act of 1918, c. 18, 40 Stat. 1057, provides in part as follows:

"Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return: * * *

"In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit. * * * There shall be allowed * * * in computing the war-profits credit (as provided in section 311) only one specific exemption of $3,000; and in computing the excess-profits credit (as provided in section 312) only one specific exemption of $3,000.

"Sec. 301. (a) That in lieu of the tax imposed by Title II of the Revenue Act of 1917, but in addition to the other taxes imposed by this Act, there shall be levied, collected, and paid for the taxable year 1918 upon the net income of every corporation a tax equal to the sum of the following: * * *

## "Third Bracket

"The sum, if any, by which 80 per centum of the amount of the net income in excess of the war-profits credit (determined under section 311) exceeds the amount of the tax computed under the first and second brackets.

"Sec. 310. That as used in this title the term 'prewar period' means the calendar years 1911, 1912, and 1913, or, if a corporation was not in existence during the whole of such period, then as many of such years during the whole of which the corporation was in existence.

"Sec. 311. (a) That the war-profits credit shall consist of the sum of:

"(1) A specific exemption of $3,000; and

"(2) An amount equal to the average net income of the corporation for the prewar period, plus or minus, as the case may be, 10 per centum of the difference between the average invested capital for the prewar period and the invested capital for the taxable year. If the tax is computed for a period of less than twelve months such amount shall be reduced to the same proportion thereof as the number of months in the period is of twelve months.

"Sec. 320. * * * (b) The average net income for the prewar period shall be determined by dividing the number of years within that period during the whole of which the corporation was in existence into the sum of the net income for such years, even though there may have been no net income for one or more of such years.

"Sec. 330. That in the case of the reorganization, consolidation, or change of ownership after January 1, 1911, of a trade or business now carried on by a corporation, the corporation shall for the purposes of this title be deemed to have been in existence prior to that date, and the net income and invested capital of such predecessor trade or business for all or any part of the prewar period prior to the organization of the corporation now carrying on such trade or business shall be deemed to have been the net income and invested capital of such corporation.

"If such predecessor trade or business was carried on by a partnership or individual the net income for the prewar period shall, under regulations prescribed by the Commissioner with the approval of the Secretary, be ascertained and returned as nearly as may be upon the same basis and in the same manner as provided for corporations in Title II, including a reasonable deduction for salary or compensation to each partner or the individual for personal services actually rendered."

George W. Newgass, of New York City (Myron A. Finke, Franklin Waldheim, and A. H. Frisch, all of New York City, of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and A. H. Conner, Sp. Assts., to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and De Witt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

■ Briefly stated, the issue of law which forms the basis of this appeal is whether these corporations were affiliated for taxation purposes not only in 1918, as all agree, but also whether their predecessors, owned by the same stockholders during the pre-war period from the time the Massachusetts corporation was organized in 1912, are to be treated as one for the purpose of computing the deductible pre-war credit. It is true that the petitioner and the Massachusetts corporation were so related through stock ownership after the Massachusetts corporation was organized that, had that same situation prevailed in 1918, they would have been affiliat-

ed corporations. But the petitioner insists that Congress intended affiliation with its attendant business unity to be confined to the taxable year 1918; while the respondent has taken the position that the law requires getting the basis for comparing 1918 net income with pre-war net income by looking through form to the same business unit for each period in the same way where the facts are the same or substantially so.

Section 330 of the Revenue Act of 1918, above quoted, providing that, "in the case of the reorganization, consolidation, or change of ownership after January 1, 1911, of a trade or business now carried on by a corporation * * * the net income and invested capital of such predecessor trade or business * * * shall be deemed to have been the net income and invested capital of such corporation," applies to the business unit if the formation of the petitioner and of the Massachusetts corporation in 1912 by the stockholders of the petitioner and Rubin, and the conduct of the business thereafter as the expanded business of the petitioner, can be justly called a "reorganization, consolidation, or change of ownership" of the entire business, or if the taking over of the assets of the Massachusetts corporation by the Delaware corporation and its affiliation with the petitioner can justly be called such a reorganization, consolidation, or change of ownership. Surely if we look to the reorganization and consolidation which actually took place by virtue of these changes, although they were not all made at the same time, there can be no doubt that they bring the petitioner squarely within section 330. The actual facts cannot be ignored, although these changes were taken step by step. What happened, stripped of nonessential details, is that certain men bought the wholesale shoe business of an individual in 1912; formed a corporation which took over that business; decided to enlarge the business to manufacture as well as sell shoes; took in Rubin; bought a shoe factory; formed another corporation to take over that factory and make shoes; later formed the Delaware corporation to take over the business and assets of the first shoe-manufacturing corporation; and so we find them in 1918 doing the expanded business of 1912 through the instrumentality of the petitioner corporation and the Delaware corporation. The latter is apparent because the ownership of stock by these same men in these last corporations is the very thing which makes those corporations admittedly affiliated in 1918.

It may be noted that this method of treatment has the support of Treasury Department Regulations 45, § 802. While it is said that this particular tax was of such short duration, being applicable only in 1918, that the Treasury Department's interpretation of the law should be given little weight, as it was in force an insufficient time to have acquired the implied approval of Congress, we may agree with the petitioner as to the point of time and that no regulation can alter or amend the law, Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267, and still find some virtue in the fact that the regulation was authorized by the law, and its soundness is by no means entirely dependent upon the time it remained in force. It could hardly have been expected to attain an operative age greater than that of the law to which it applied. This regulation follows:

"The consolidated net incomes of affiliated corporations for the prewar period shall be the average consolidated net income for the prewar years of such of the several corporations included in the consolidation for the taxable year as were affiliated during the prewar period, plus the aggregate of the average net income for each of the corporations not affiliated during the prewar period which were in existence during all of the prewar period or during at least one full year within the prewar period. The net income of a subsidiary corporation organized during the prewar period by an existing corporation shall also be included."

While sections 320 and 330 of the Revenue Act of 1918, above quoted, embrace the case now presented, the regulation supplied the elements of detail thought inadvisable to put into the general law which covered the subject broadly. The regulation is perfectly consistent with the law and carries out the evident intent of Congress to reach for special taxation purposes net income attributable solely to abnormal war profits. This is done by taking from 1918 net income what the business earned normally during the three years before war conditions prevailed, regardless of the form of ownership, but with due regard for the fact of substantial identity of ownership extending throughout the business as a whole during the pre-war period. In carrying out this purpose, net income and invested capital are linked together and the amount of the war profits credit made dependent upon both, section 311 (a) (2), Act of 1918, whether either covers all or a part only of the pre-war period, disregarding only fractions of years in which

no part of the business was in existence the entire year.

By deducting from 1918 net income "the average consolidated net income" received by the predecessors of the 1918 affiliated corporations during the pre-war years rather than deducting the consolidated average net income of each for the pre-war years, the Commissioner has recognized and given practical application to the fact that the petitioner's business was in existence during the entire pre-war period, although at first it had not, of course, attained the size to which it grew. In 1912, as expanded and enlarged to include the manufacture of shoes as well as the sale of them at wholesale, the ownership of the expanded business, being substantially the same as before, gave it the character of business oneness, W. S. Bogle & Co. v. Commissioner (C. C. A.) 26 F.(2d) 771, 772, and a pre-war affiliated status.

We have been referred to section 320(a), Act of 1918, which provides how net income shall be "ascertained and returned" for the calendar years 1911, 1912, 1913, and "for the taxable year." It is thought to have been overlooked when the Commissioner's action in computing the war profits tax was approved by the Board and to be at variance with the action taken. Yet the amount of net income for all these years is not in dispute, and we can see no reason for thinking this section was overlooked or that it is applicable to anything but the method of arriving at the net income of the component parts of the business unit. It does not afford a basis for computing average net income for the pre-war period even of such component parts. That is treated in section 320(b). And, being confined to the separate net income of such parts for the years in question, it stops far short of providing a method for getting at the average net income for the pre-war period of a business conducted in 1918 by affiliated corporations who succeeded to pre-war affiliated business.

Although the petitioner does not quite claim that treating the business as affiliated during the pre-war period is contrary to the due process clause of the Constitution, it does insist that the constitutionality of such a construction is so doubtful that affiliation should be confined to 1918 to avoid any uncertainty in that regard. When the law as we have applied it is tested, as it should be, to see that the tax is not imposed in such an arbitrary or capricious manner as to amount to confiscation, Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 24, 36 S. Ct. 236, 60 L.

Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, it would seem that there has been no violation of the Fifth Amendment. All in the same class are treated alike, and the class is determined on the reasonable basis of business affiliation in fact during the pre-war years. Compare Billings v. United States, 232 U. S. 261, 283, 34 S. Ct. 421, 58 L. Ed. 596.

Judgment affirmed.