UNITED STATES v. WISSAHICKON TOOL WORKS, Inc., and three other cases.

United States District Court
S. D. New York.
July 12, 1949.

898

of the Renegotiation Act, 50 U.S.C.A. Appendix, § 1191(c), against Wissahickon Tool Works, Inc. (hereinafter referred to as "Wissahickon"), Roxboro Steel Company (hereinafter referred to as "Roxboro"), Wilkes Barre Carriage Co., Inc. (hereinafter referred to as "Wilkes Barre"), and West Pittston Iron Works, Inc. (hereinafter referred to as "West Pittston"), to recover allegedly excessive profits for the fiscal year which ended July 31, 1943.

The complaints allege that defendants are Delaware corporations doing business in this district; that renegotiation proceedings were commenced and notices thereof given defendants; that no agreements were reached; that orders were entered by the War Contracts Price Adjustment Board determining that defendants had obtained excessive profits; that reviews of the orders were thereafter initiated and that subsequently orders were entered by the Board determining the amounts of excessive profits of defendants, less credits, if any, for income and excessive profits taxes; that demands for these amounts have been made on defendants and no parts thereof have been paid.

Defendants in their answers set up numerous defenses, which the United States now moves to strike as insufficient in law. In addition, defendants have alleged counterclaims and set-offs which the United States moves to strike on the ground that the court lacks jurisdiction over the subject matter thereof. The United States has also moved for judgment on the pleadings in each of the actions. Three of the defendants have moved to make James W. Johnson, the Collector of Internal Revenue for the Third District, an additional party defendant as to some of the counterclaims alleged.

John F. X. McGohey, U. S. Attorney, New York City (Louis Mansdorf, New York City, of counsel), for plaintiff.

Victor R. Wolder, New York City, for defendants.

KAUFMAN, District Judge.

These are four separate actions brought by the United States, pursuant to § 403(c)

The motions were argued together and the issues involved are so similar as to warrant their disposition in one opinion.

Counsel for defendants has conceded in his brief that the contentions raised in subsections (c), (d), (e), (f) and (g) of paragraph Fourth of Roxboro's answer, paragraph First (a) of Wilkes Barre's and West Pittston's answers and paragraph

Second of Wissahickon's answer have all been passed upon and overruled in Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694. Consequently, no discussion of these contentions is necessary.

The Supreme Court also held in the Lichter case that the "renegotiation of war contracts was not a taking of private property for public use", 334 U.S. at page 787, 68 S.Ct. at page 1317, that "the collection of renegotiated excessive profits * * * [was] not a deprivation of * * * property without due process of law in violation of the Fifth Amendment," 334 U.S. at page 788, 68 S.Ct. at page 1318, and that the Tax Court remedy provided for in the statute afforded "procedural due process." 334 U.S. at page 791, 68 S.Ct. at page 1319. These rulings dispose of the contentions raised in subsections (a) and (b) of the aforementioned paragraphs.

■ Subsection (h) of the aforementioned paragraphs challenges the constitutionality of the Renegotiations Act in that it "arbitrarily excludes from the element of cost items that are reasonable and properly chargable to the cost of doing business and the cost of carrying out and belonging to the contracts sought to be renegotiated".

Section 403(a) (4) (B) of the Act provides that "costs shall be determined in accordance with the method of cost accounting regularly employed by the contractor in keeping his books", subject to the exclusion of any item which the Board or Tax Court deems "unreasonable or not properly chargeable to such contract". The only items specifically excluded from the computation of cost are (1) a recomputation of the amortization deduction pursuant to Section 124 (d) of the Internal Revenue Code, 26 U.S.C.A. § 124(d), until after such recomputation has been made as provided in the statute and (2) those arising by reason of the application of a carry-over or carry-back. If no method of keeping books is regularly employed by the contractor, or if the method employed does not in the opinion of the Board or Tax Court properly reflect such costs, costs are to be "determined in accordance with such method as in the opinion of the Board or Tax Court * * * properly reflect such costs."

The contention that these provisions are unconstitutional is without merit for it is apparent that the statute makes no "arbitrary" exclusion as to any particular item of cost. On the contrary it grants to the Board and, upon redetermination, to the Tax Court, the power to make those "pragmatic adjustments which may be called for by particular circumstances." Cf. Federal Power Comm'n. v. Natural Gas Pipeline Co., 315 U.S. 575, 586, 62 S.Ct. 736, 743, 86 L.Ed. 1037.

■ In paragraph Fifth of Roxboro's answer, paragraph Second of Wilkes Barre's and West Pittston's answer and paragraph Third of Wissahickon's answer, defendants contend that the law is unconstitutional in that it separates the alleged excessive profits of defendants for the particular years involved and does not permit defendants to deduct losses which occurred in other fiscal years in relation to war contracts, and that by so doing the statute has fixed an arbitrary period for the measurement of excessive profits which has resulted in the taking of defendant's property for public use without just compensation in violation of the Fifth Amendment.

As has heretofore been noted, the Supreme Court in the Lichter case has held that the renegotiation of war contracts was not a taking of private property for public use. 334 U.S. at page 787, 68 S.Ct. at page 1317, 92 L.Ed. 1694, the court said: "The recovery by the Government of excessive profits received or receivable upon war contracts is in the nature of the regulation of maximum prices under war contracts or the collection of excess profits taxes, rather than the requisitioning or condemnation of private property for public use."

■ It is contended in paragraphs Third and Sixth of Roxboro's answer, paragraph Third of Wilkes Barre's and West Pittston's answers, and paragraph Fourth of Wissahickon's answer that the action by the War Department Price Adjustment Board in making its determination was so arbitrary and capricious as to deny defendants the due process of law required by the Fifth Amendment.

900

It is also contended in paragraphs Seventh of Roxboro's answer, paragraph Fourth of Wilkes Barre's and West Pittston's answers, and paragraph Fifth of Wissahickon's answer that the action of the War Contracts Price Adjustment Board, in failing to exempt defendants from the provisions of the Act under subsection (i) (4), was so arbitrary as to constitute a denial to defendants of the due process of law required by the Fifth Amendment.

It does not appear from the pleadings that defendants ever instituted proceedings in the Tax Court in accordance with Subdivision (e) of the Act, and it is settled that this court has no power to consider the validity of the renegotiation proceedings before the Board, unless such proceedings had been instituted. Lichter v. United States, 334 U.S. 742, 789–793, 68 S.Ct. 1294, 92 L.Ed. 1694; Sampson Motors, Inc. v. United States, 9 Cir., 168 F.2d 878.

Consequently, the motions to strike as insufficient the first, second and third affirmative defenses of defendant Roxboro, and the first and second affirmative defenses of defendants Wissahickon, Wilkes Barre and West Pittston, in which the foregoing paragraphs of the answer are alleged, are granted.

It is contended in the fourth affirmative defenses of Wilkes Barre and Wissahickon, the fifth affirmative defense of West Pittston and the sixth affirmative defense of Roxboro that the complaint "does not set forth facts sufficient in law to constitute a cause of action" because it appears on the face thereof that no agreements or orders determining the amount of excessive profits were made within one year following the commencement of the renegotiation proceedings. Subsection (c) (3) of the Act provides that if no agreement or order is made within one year following the commencement of proceedings, all liabilities shall be discharged and that "such one-year period may be extended by mutual agreement". Whether or not there was an extension agreement does not appear from the pleadings. This subsection is one of limitations; it is a matter of defense and the failure to anticipate it in the complaint does not render the complaint insufficient. Defendants have recognized this, for they have set up the same facts as a separate defense in the fifth affirmative defenses of Wilkes Barre and Wissahickon, the sixth affirmative defense of West Pittston and the seventh affirmative defense of Roxboro.

The complaint on its face is sufficient and the motions to strike the Fourth affirmative defenses of defendants Wilkes Barre and Wissahickon, the Fifth affirmative defense of defendant West Pittston and the Sixth affirmative defense of defendant Roxboro are granted.

The motions to strike the Fifth affirmative defenses of defendants Wilkes Barre and Wissahickon, the Sixth affirmative defense of defendant West Pittston and the Seventh affirmative defense of defendant Roxboro are denied.

Paragraph Eleventh of Wilkes Barre's answer, paragraph Thirteenth of West Pittston's answer, paragraph Tenth of Wissahickon's answer and paragraph Eighteenth of Roxboro's answer are denials of allegations in the complaints. The motions to strike these paragraphs are denied.

Paragraph Eleventh and Twelfth of Roxboro's answer, paragraphs Fifth and Sixth of Wilkes Barre's answer and paragraphs Fifth, Sixth, Seventh and Seventh (a) of West Pittston's answer contain matter which has been characterized in the answers as defenses, counterclaims, and set-offs.

These paragraphs allege that defendants are entitled to the return of certain income and excess profit taxes because they sustained net operating losses in years subsequent to those in which the taxes were paid; that claims for refunds were filed more than six months prior to the institution of this suit, and that the claims have not been acted upon by the Collector or the Commissioner.

It is apparent that these allegations constitute claims against the United States which have no relation to the subject matter of this suit. As such, they do not constitute defenses.

Jurisdiction as to these alleged counterclaims and set-offs is alleged to

arise under 28 U.S.C.A. §§ 1331, 1340, 1345 and 1346. Of these, only the latter is applicable.

In so far as here pertinent, 28 U.S.C.A. § 1346, as amended, reads:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

"(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws, (i) if the claim does not exceed $10,000 or (ii) even if the claim exceeds $10,000 if the collector of internal revenue by whom such tax, penalty or sum was collected is dead or is not in office as collector of internal revenue when such action is commenced;

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

While each of the claims asserted is in excess of $10,000, the pleadings do not allege that the taxes, of which a refund is sought, were collected by a collector now deceased, or not in office. In the absence of allegations to that effect, defendants have failed to show that this court has jurisdiction of the claims so alleged against the United States, see Moses v. United States, 2 Cir., 61 F.2d 791, and they must, accordingly, be stricken. Nassau Smelting Works v. United States, 266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190; United States v. Lauer, D.C., 45 F.Supp. 670.

Defendants have also set up these claims as counterclaims against James W. Johnson, the Collector of Internal Revenue for the third district, to whom it is alleged the taxes were paid, and defendants now move under Rule 13(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to make Johnson a party defendant to this action with respect to these claims.

Rule 13(h), however, permits the joinder of an additional party only "when the presence of parties other than those to the original action is required for the granting of complete relief in the determination of a counterclaim * * *". Here the court has no jurisdiction of the counterclaims as against the United States, and thus the effect of granting the motion would be to permit defendants to assert against persons who are not parties to the original action, new claims which have no relation to any claim originally asserted of which this court has jurisdiction.

Rule 13(h) is not applicable in such a situation. The fact that a judgment against the collector is converted for all practical purposes into a judgment against the United States when a certificate of probable cause is signed by the court under the provisions of 28 U.S.C.A. § 2006, see Moore Ice Cream Co. v. Rose, 289 U.S. 373, 381, 53 S.Ct. 620, 77 L.Ed. 1265, gives this court no warrant to treat a suit against the Collector as identical with one against the United States. Cf. United States v. Kales, 314 U.S. 186, 198, 62 S.Ct. 214, 86 L.Ed. 132 et seq.; Royal Worcester Corset Co. v. White, D.C. 40 F.Supp. 267; Mellon v. Heiner, D.C., 30 F.Supp. 948.

The motions by defendants Roxboro, Wilkes Barre and West Pittston to make Johnson a party to this action are denied, and the motions to strike defendants Roxboro's, Wilkes Barre's and West Pittston's first counterclaims against Johnson and defendant West Pittston's second counterclaim against Johnson are granted.

The first counterclaims and set-offs of defendants Roxboro and Wissahickon also allege claims for the refund of taxes. The Roxboro claim is in excess of $10,000 and exceeds that asserted by the United States, and it is alleged therein that the collector to whom the taxes were paid is no longer in office. The Wissahickon claim is for less than $10,000. The district court would therefore have jurisdiction of these claims under the provisions of 28 U.S.C.A. § 1346, as amended, if they were brought as original suits.

902

The government contends, however, that this court lacks jurisdiction to entertain these counterclaims and set-offs in view of the fact that they arise out of transactions entirely different from those alleged in the complaints.

The general provisions concerning counterclaims are found in Rule 13 of the Federal Rules of Civil Procedure. This rule provides for both "compulsory" and "permissive" counterclaims, and continues, subdivision (d):

"These rules shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits against the United States or an officer or agency thereof."

It is, of course, fundamental that the United States may be sued only to the extent that it has consented to be sued, and that this limitation applies as well to counterclaims as it does to original suits. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; Nassau Smelting Works v. United States, 266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190. The only statute concerning the jurisdiction of the District Courts to entertain counterclaims affecting the United States is 28 U.S.C.A. § 1346, which defines the jurisdiction of the District Courts in actions against the United States. Subdivision (c) of that section provides:

"The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section."

There is no reciprocal provision authorizing counterclaims against the United States in actions in which the United States is plaintiff, and it appears to be settled that although a claim may be of such a character that an original suit might be brought on it against the United States, the provisions authorizing such a suit are not broad enough to authorize the assertion of the claim as a counterclaim in so far as it seeks to recover an affirmative judgment against the United States. United States v. Nipissing Mines Co., 2 Cir., 206 F. 431; see United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. U. S. Fidelity Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894; United States, for Use of Mutual Mfg. Co. v. Biggs, D.C., 46 F.Supp. 8; 3 Moore's Federal Practice (2d Ed.) § 13.29. The motions to strike the counterclaims are to that extent granted. However, in view of the fact that the pleadings allege compliance with the provisions of 26 U.S.C.A. § 3772, and the demands asserted are of the character of which this court would have jurisdiction in original suits, they are properly asserted here to the extent of set-offs, and the motions to strike them as such are denied. United States v. Nipissing Mines, supra; 28 U.S.C.A. § 2406; see 3 Moore's Federal Practice (2d Ed.) § 13.30.

Inasmuch as defendants' answers as they now stand raise issues of fact, which, if proven, will defeat recovery, the motions for judgment on the pleadings are denied. Friedman v. Washburn Co., 7 Cir., 145 F.2d 715.

The motions to strike are granted to the extent herein indicated with leave to amend within ten days after the filing of the order herein.

Settle order on notice.