**UNITED STATES v. WISSAHICKON TOOL WORKS, Inc.**

**UNITED STATES v. ROXBORO STEEL CO.**

**UNITED STATES v. WILKES BARRE CARRIAGE CO., Inc.**

**UNITED STATES v. WEST PITTSTON IRON WORKS, Inc.**

United States District Court
S. D. New York.
April 10, 1951.

332

Irving H. Saypol, U. S. Atty., New York City (Julian R. Wilheim, Atty. Dept. of Justice, Washington, D. C., of counsel), for plaintiff.

Victor R. Wolder, New York City, for defendants.

COXE, District Judge.

These are motions, (1) by the plaintiff for summary judgment in each of the four above-entitled actions, and (2) by the defendants for orders granting leave to serve amended and supplemental answers, consolidating all four actions, and staying the trial until final determination of an action brought against plaintiff in the United States Court of Claims by Empire Ordnance Corporation, the parent of the defendants.

Each action was brought in October 1948, pursuant to Section 403(c) of the Renegotiation Act of 1942, as amended, 50 U.S.C.A.Appendix, § 1191(c), to recover a specific sum of money, with interest at 6% per annum from April 18, 1947, alleged to be due plaintiff as excessive profits for the fiscal year ending July 31, 1943 upon defendants' war contracts, after their renegotiation and allowance of the tax credits, as provided in Section 3806 of the Internal Revenue Code, 26 U.S.C.A. § 3806. The complaints are substantially identical, except as to amounts, and the answers set up practically the same defenses, also except as to amounts. It will, therefore, be convenient to dispose of all the motions in one opinion.

After the actions were at issue, plaintiff moved to strike the defenses in the answers as insufficient in law, and for judgments on the pleadings. Judge Samuel H. Kaufman granted the motions as to most of the defenses; he denied the motions for judgment, on the ground that the other defenses raised issues of fact, and granted defendants leave to serve amended answers within ten days. United States v. Wissahickon Tool Works, D.C.S.D.N.Y., 84 F. Supp. 896. No amended answers have been served.

Each complaint alleges that renegotiation proceedings with respect to the aggregate of the amounts received or accrued by the defendant under contracts with the War Department and sub-contracts, as defined in the Renegotiation Act, with respect to the defendant's fiscal year ending July 31, 1943, were commenced by the War Department Price Adjustment Board, and notice thereof given to the defendant by registered mail, on July 11, 1944; that no agreement with respect to the amount of excessive profits was made by the War Contracts Price Adjustment Board and the defendant; that on October 2, 1945 an order was issued determining that the defendant had obtained excessive profits on its contracts, notice of which was given defendant on that day by registered mail; that thereafter, upon review of this order, the War Contracts Price Adjustment Board entered an order on April 3, 1947, determining the amount of excessive profits at a stated amount, subject to credits, if any, for Federal income and excess profits taxes, as provided in Section 3806 of the Internal Revenue Code, a copy of which order was sent by registered mail to the defendant on that day, with a letter demanding payment, with interest at 6% per annum from April 18, 1947; and that none of the amount claimed has been paid, nor has any part thereof been withheld or otherwise eliminated by plaintiff.

Each defendant denies that it owes the amount sued for, and also the allegation that renegotiation proceedings were commenced on July 11, 1944. All the other allegations are admitted.

■ The first denial raises no question of fact, for the order of the War Contracts Price Adjustment Board determining the amount of excessive profits is final and conclusive, not subject to review or redetermination by any court, except the Tax Court of the United States. Renegotiation Act, Subsections (c) (1) and (e) (1); Lichter v. United States, 334 U.S. 742, 789–793, 68 S.Ct. 1294, 92 L.Ed. 1694.

Defendants' principal contentions rest upon their defenses (which Judge Kaufman permitted to stand) that renegotiation proceedings were not commenced on July 11, 1944, as alleged, but at an earlier date, viz., August 6, 1943, and that all liability to repay any alleged excessive profits was discharged by reason of the fact that no order or agreement determining such excessive profits was made within one year from the date of the actual commencement of renegotiation proceedings, and that such one-year period was not extended by mutual agreement or otherwise. (See Subsection (c) (3) of the Act.)

■ *First.*—Defendants' contention that renegotiation proceedings were actually begun as early as August 6, 1943 seems to be based upon their assertions that a vast amount of accounting and other information was furnished by them to the Government, and renegotiation conferences held with representatives of the War Department Price Adjustment Board, long before July 11, 1944, beginning as early as August 6, 1943—only six days after the close of their fiscal years. These facts, however, cannot be held to constitute the commencement of the statutory renegotiation proceedings, in view of the provision in Subsection (c) (1) that the mailing by the War Contracts Price Adjustment Board by registered mail to the contractor of a notice of the time and place of a conference to be held with respect to its alleged excessive profits, shall constitute the commencement of the renegotiation proceedings. The statute is explicit, and sets forth the only manner by which the statutory renegotiation proceedings may be commenced.

*Second.*—Defendants admit that each of them received by registered mail on July 13, 1944, a letter, dated July 11, 1944, from the Army Service Forces, New York Ordnance District, entitled "Notice of Commencement of Renegotiation", reading as follows: "The War Contracts Price Adjustment Board has determined that renegotiation proceedings under the Renegotiation Act * * * for your fiscal year ended December 31, 1943 shall be conducted initially by this office. A conference with you with respect to this matter is hereby set for July 17, 9:30 A.M., at this office * * *. This notice, sent by registered mail, constitutes commencement of the renegotiation proceedings in conformity with the provisions of subsection (c) (1) of the Renegotiation Act."

■ Defendants contend, however, that this letter was a nullity and did not constitute the statutory notice required, because it referred to the fiscal year ended December 31, 1943, when their fiscal years ended on July 31, 1943. This is little more than a quibble. Defendants do not suggest that they were misled by the error. In fact, they participated in the proceedings, and, so far as appears, without protest. While the giving of a proper notice is a statutory prerequisite to the institution of renegotiation proceedings, I hold that, under the circumstances here, this letter was a sufficient notice.

■ *Third.*—Defendants' contention that all liability to repay any alleged excessive profits was discharged by reason of the fact that no order or agreement determining such excessive profits was made within one year from the date that renegotiation proceedings were commenced, and the one-year period was not extended by mutual agreement or otherwise, as provided in the Renegotiation Act, is without merit. Defendants do not deny that, under date of June 18, 1945, they and Stewart E. Reimel, Brigadier General, U. S. Army District Chief, acting on behalf of the War Contracts Price Adjustment Board, created by the Renegotiation Act, under due delegations of authority made pursuant to Subsection (d) (4) of the Renegotiation Act, signed an agreement which provided that, in accordance with the provisions of Clause (B) of the second sentence of Subsection (c) (3) of the Renegotiation Act,

the time within which a determination of the amount of excessive profits, if any, derived by each of them for the fiscal year ended July 31, 1943 might be made by agreement or order, was extended to and including December 31, 1945. But they insist that there was no consideration for this agreement, and that, therefore, it is not binding upon them. However, no consideration, other than the signatures of both parties, was necessary. When defendants signed the agreement it amounted to a voluntary waiver of their rights to have their liability determined within a year, as required by the Act.

*Fourth.*—Judge Kaufman allowed to stand, but only as set-offs, the defenses of Wissahickon and Roxboro based upon income and excess profits taxes, alleged to have been overpaid, claims for the refund of which had been duly filed but not acted upon within six months. See 26 U.S.C., § 3772. Plaintiff admits that the claim of Wissahickon has been allowed. Roxboro's claim, however, has not been substantiated; in any event, it raises no issue as to any material question of fact under Fed. Rules Civ.Proc. rule 56, 28 U.S.C.A.

*Fifth.*—Defendants further contend that, as the Renegotiation Act is silent on the subject of interest, the allowance of interest is discretionary, and, in the exercise of sound equitable principles, no interest should be granted. The fact that the Act is silent on the subject is immaterial, for interest at a reasonable rate is recoverable on obligations to the Government, as damages for unreasonable delay in payment, even though the statute creating the obligation makes no reference to interest. Young v. Godbe, 15 Wall. 562, 565, 21 L.Ed. 250; Billings v. United States, 232 U.S. 261, 284–288, 34 S.Ct. 421, 58 L.Ed. 596; Royal Indemnity Co. v. United States, 313 U.S. 289, 295–297, 61 S.Ct. 995, 85 L.Ed. 1361. I think the rate of 6% demanded by the plaintiff is reasonable under the circumstances. United States v. Strontium Products Co., D.C.S.D. W.Va., 71 F.Supp. 475, 477; United States v. Union Concrete Pipe Co., D.C.S.D. W.Va., 93 F.Supp. 650; Sampson Motors, Inc., v. United States, 9 Cir., 168 F.2d 878.

Defendants' motions for leave to serve amended and supplemental answers are denied, and plaintiff's motions for summary judgment are granted, with interest at 6% per annum from April 18, 1947, and with costs.