200 F.2d 936
 UNITED STATES
v.
WISSAHICKON TOOL WORKS, Inc.
UNITED STATES
v.
ROXBORO STEEL CO.
UNITED STATES
v.
WILKES BARRE CARRIAGE CO., Inc.
UNITED STATES
v.
WEST PITTSTON IRON WORKS, Inc.
 Nos. 39-42.
 Dockets 22415-22418.
 United States Court of Appeals Second Circuit.
 Argued November 14, 1952.
 Decided December 23, 1952.
 
 Victor R. Wolder, New York City, for defendants-appellants.
 Julian R. Wilheim, Atty., Dept. of Justice, Washington, D. C. (Holmes Baldridge, Asst. Atty. Gen., Saul R. Gamer, Atty., Dept. of Justice, Washington, D. C. and Myles J. Lane, U. S. Atty., and Harold J. Raby, Asst. U. S. Atty., both of New York City, on the brief), for plaintiff-appellee.
 Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.
 CLARK, Circuit Judge.
 
 
 1
 Four actions brought by the United States pursuant to the Renegotiation Act, § 403 of the Sixth Supplemental National Defense Appropriation Act of 1942, as amended, 50 U.S.C.Appendix § 1191, have been consolidated for purposes of this appeal. In these suits plaintiff seeks to recover allegedly excessive profits made under Government contracts by the four defendants, Wissahickon Tool Works, Inc., Roxboro Steel Company, Wilkes Barre Carriage Co., Inc., and West Pittston Iron Works, Inc., during their fiscal year ending July 31, 1943. After issue was joined, plaintiff moved to strike the defenses, offsets, and counterclaims set up in the answers and for judgment on the pleadings. Three of the defendants moved to have James W. Johnson, then Collector of Internal Revenue for the Third District, made an additional party defendant as to some of the counterclaims. The district court denied the defense motions and plaintiff's motion for judgment on the pleadings, but ordered most of the defenses and offsets and all of the counterclaims struck from the answers. D.C.S.D.N.Y., 84 F. Supp. 896. Plaintiff subsequently moved for summary judgment against all four defendants, who, in turn, submitted various cross-motions. These motions were heard by another judge, who denied defendants' motions and granted summary judgment for plaintiff in an opinion filed on April 10, 1951, D.C.S.D.N.Y., 99 F.Supp. 331. On January 23, 1952, plaintiff noticed for settlement orders and judgments based on this decision; but on the settlement date, January 25, it was met with an order to show cause on February 1 on defendants' motions for leave to serve supplemental answers and to reargue the motions originally heard and granted the previous year. The judge on February 1, 1952, having heard arguments, denied the motions and signed in each case the "Order and Judgment" as submitted by the plaintiff, embodying the mandate of the opinion of April 10, 1951, as well as the denial of the further motions. Defendants are appealing from these judgments and also complain of the adverse earlier rulings.[1]
 
 
 2
 We may first address ourselves to the question whether or not the appeals taken on March 31, 1952, were timely. They were of course within the proper time, Fed.Rules Civ.Proc. rule 73(a), as appeals from the orders of February 1, 1952, but not from those of April 10, 1951. But the earlier orders were clearly the final judgments. No more explicit mandate for a plaintiff's judgment than that granting a summary judgment in the amount claimed can be conceived; and notation of the grant in the civil docket on that date became the judgment under the provisions of F.R. 58. Counsel and the court officials were on further notice of the correct practice under this rule by reason of a supplementing local rule — Rule 10 of the General Rules of the district court — providing that the judge's memorandum determining a motion "shall constitute the order." The clerk should then have prepared and entered in his civil judgment or order book, F.R. 79(b), a simple form of judgment as directed in F.R. 54(a), eschewing the lengthy recitals familiar in state practice. But failure to do so or to note it in some other place or book would not change the result, cf. F.R. 79(a); nor would the date be changed by forms of judgment later submitted by counsel, even if these are signed by the judge. Leonard v. Prince Line, 2 Cir., 157 F.2d 987, 989; Murphy v. Lehigh Valley R. Co., 2 Cir., 158 F.2d 481, 485; Binder v. Commercial Travelers Mut. Acc. Ass'n of America, 2 Cir., 165 F.2d 896, 901; Markert v. Swift & Co., 2 Cir., 173 F.2d 517, 519, n. 1. The objective of this carefully delineated practice is obviously to enable the court to keep control of its own judgment and to avoid such purposeless delay as this case discloses. See the Advisory Committee's Note to the amendment to F.R. 58 stating that the change "makes it clear that the clerk shall enter the judgment forthwith in the situations specified without awaiting the filing of a formal judgment approved by the court."
 
 
 3
 Hence the court should not have accepted plaintiff's forms of judgment (which, incidentally, were more complicated than F. R. 54[a] contemplates); nor should it have accepted motions for reargument at that late date in 1952, cf. F.R. 59. Defendants, however, could have made motions for relief from the judgments on any of the grounds stated in F.R. 60(b). In the interest of justice we might treat defendants' motions as in effect raising the issues available under the latter rule, and the appeals as from their denials, which are appealable orders. Cromelin v. Markwalter, 5 Cir., 181 F.2d 948; Weilbacher v. J. H. Winchester & Co., 2 Cir., 197 F.2d 303, 305. None of the grounds specified in the rule, however, seem apposite to the contentions stressed in the motions; and presumably we should treat the appeals as so limited and affirm accordingly. But since all the parties and the court have participated in this irregular procedure, and the merits were re-examined on the latest hearing, we have decided, not without some hesitation, to consider all questions presented and argued by the parties.
 
 
 4
 The first questions raised concern the court's action in granting in part plaintiff's motions to strike portions of the answers. D.C.S.D.N.Y., 84 F.Supp. 896. None of the objections here raised are well founded. Since the complaints, identical as to each defendant except for the amounts, adequately met the requirements of F.R. 8(a), the court did not err in striking the defenses which challenged their adequacy. The court also properly struck those offsets and counterclaims, based on defendants' tax refund claims amounting to more than $10,000, where the taxes had been paid to a collector still in office. Such claims are beyond the jurisdiction of the district court, 28 U.S.C. § 1346, and jurisdictional limitations based on sovereign immunity apply equally to counterclaims against the Government. See, e. g., Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190. The same rule prevailed in March, 1949, when the counterclaims were interposed; we cannot agree with defendants' contention that the form of § 1346 in effect from its enactment in 1948 to its amendment in 1949 lacked the $10,000 maximum limit.[2] Consequently the court had no alternative but to deny defendants' motion under F.R. 13(h) to join James W. Johnson, the Collector of Internal Revenue to whom the taxes had been paid, as a party defendant with respect to these counterclaims.
 
 
 5
 Finally, defendants object to the striking of their allegations that they were denied due process of law by the arbitrary and capricious action of the War Department Price Adjustment Board and the War Contracts Price Adjustment Board, the two bodies which conducted the renegotiation proceedings here involved. But the district court lacked the power to consider these contentions. The Renegotiation Act vests exclusive jurisdiction in the Tax Court to review administrative determinations of the amount of a contractor's excessive profits liability. Sec. 403(e) (1). Defendants did not pursue this mode of relief. The Act specifically provides that in such a case the Board orders shall be final and not subject to review by any court. Sec. 403(c) (1). Defendants' objections to the actions of the Boards involve determinations of the amount of liability and thus fall squarely within the orbit of exclusive Tax Court review. See Lichter v. United States, 334 U.S. 742, 792, 68 S.Ct. 1294, 92 L.Ed. 1694. Hence there was no error in the orders precluding defendants from asserting this defense in the district court.
 
 
 6
 On defendants' appeals from the grants of summary judgment the principal issues concern the effect of the limitation provisions in the Renegotiation Act and the propriety of the court's refusal to permit the offsets over which it had jurisdiction. Defendants also challenge the court's allowance of interest at the rate of six per cent from April 18, 1947. And in addition to certain other contentions noted below, they urge that even if the rulings of law were not erroneous, there still remained questions of fact which required denial of plaintiff's motions for summary judgment.
 
 
 7
 The Renegotiation Act sets time limits both upon the commencement and completion of administrative proceedings to determine excessive profits. Sec. 403(c) (3) provides that all liability for such profits shall be discharged if administrative action is not begun within one year after either the close of the contractor's relevant fiscal year or the date upon which he filed his Standard Form of Contractors Report, whichever is later. The same section also discharges liability if the amount of excessive profits is not determined within one year after renegotiation proceedings are begun unless the time has been extended by mutual agreement. The complaints in the present actions show that plaintiff has met these limitation requirements, and neither defendants' pleading nor their evidence raise a genuine question of fact as to this. On July 11, 1944, less than a year after defendants' relevant fiscal year had ended, they were sent registered letters by an authorized delegate of the War Contracts Price Adjustment Board announcing commencement of renegotiation proceedings. The Act explicitly provides that the mailing of such notice marks the beginning of the proceedings. Sec. 403(c) (1). There is therefore no merit in defendants' contention that renegotiation was never properly begun or was started at some other time. The district judge quite properly characterized the argument that the July, 1944, notice was ineffective because of a typographical error as to the exact date on which the fiscal year ended as "little more than a quibble." 99 F.Supp. 331, at page 333. Defendants have not shown, nor do they seriously contend, that this error in any way misled them.
 
 
 8
 The one-year period allowed by the Act for completion of an original administrative determination of liability thus began on July 11, 1944. Within a year of this date, on June 18, 1945, plaintiff and defendants entered into an agreement extending the limitation period to December 31, 1945. This agreement, authorized by the statute, was not invalid for want of consideration as defendants suggest. On October 2, 1945, the War Department Price Adjustment Board, acting on behalf of the statutory War Contracts Price Adjustment Board, issued orders determining the defendants' excessive profits liabilities. For purposes of the Act's limitations provision and the parties' extension agreement, these orders are deemed the orders of the War Contracts Price Adjustment Board, and unquestionably were issued within the extended time period. Subsequent review of the orders by the War Contracts Price Adjustment Board itself, which was not completed until after December 31, 1945, is not subject to the one-year restriction. Sec. 403(c) (3).
 
 
 9
 There is no merit in the argument that the preliminary ruling allowing this defense to stand set the "law of the case." What we said on this point in Frost v. Bankers Commercial Corp., 2 Cir., 194 F. 2d 505, at page 508, is equally germane here: "The course of proceedings does not suggest that this judge contemplated finality to his preliminary ruling * * *. But be that as it may, no assumed `law of the case' can require us to reverse a just and ultimately necessary judgment, so that the District Court may arrive at it in a more roundabout way."
 
 
 10
 Objections raised by the defendants to the amounts of the judgments entered against them raise somewhat more trouble-some questions. Quantitatively the most significant is the contention that the court should have reduced the judgments by $954,394.75[3] withheld by the Government, on account of defendants' renegotiation liability, from their purported parent, Empire Ordnance Corp., and by an additional $16,453.49 withheld from their associate, Pencoyd Realty Co. These withholdings took place after defendants filed their answers, but before the court granted summary judgment. The Renegotiation Act, § 403(c) (2), authorizes Government court action to recover from a contractor "excessive profits actually paid to him and not withheld." Here, however, defendants do not concede the validity of the withholding. Empire has sued the United States in the Court of Claims to recover the amounts withheld, and Pencoyd has brought a similar action in the Southern District of New York. It is the plaintiff's position that these are matters to be settled upon statement of an account at the time when the judgments come to be satisfied and expresses its purpose then to set forth all withholdings and payments admittedly made to, and received by, it in connection with these renegotiation debts. This seems to us a desirable course in the present posture of the claims. Since they are not decided, it would be unfair to require either of the opposing parties to make a final election in this litigation as to their validity; and the plan suggested seems the most proper and convenient method of holding them for later disposition. Should these amounts now be stricken from the judgments, and later become available to plaintiff, the method of reaching them at that time may be unclear; presumably some motion under F.R. 60(b) should be available for additions to the judgment. But the method suggested by the plaintiff is obviously more simple and direct. And it had the added merit that it removes all incentive for further delay in this already too greatly prolonged attempt to procure the refunds legally due the Government. We conclude that all parties have been fairly dealt with by the district court's disposition of the matter. Hence the court did not err in refusing leave to the defendants to file supplemental answers setting up this offset or in refusing to stay these proceedings pending the outcome of the Empire and Pencoyd suits.
 
 
 11
 Defendants Wissahickon, Wilkes Barre, and West Pittston contend that they are entitled to offsets of $12,723, $45,827, and $9,043, respectively, for "additional quick cost amortization" allegedly due them for the fiscal year here involved under Int. Rev.Code § 124(d), 26 U.S.C. § 124(d). No recomputation of defendants' amortization deduction has yet been made. The Renegotiation Act, § 403(a) (4) (C), provides, however, that "The absence of such a recomputation * * * shall not constitute a cause for postponing * * * the entry of an order, determining the amount of excessive profits, or for staying the elimination thereof." Whether the Act contemplated the recomputation of amortization deductions in an action brought to collect a renegotiation rebate seems exceedingly doubtful. Sec. 403(c) (2) permits the Government to recover all excessive profits except those "withheld or eliminated by some other method under this subsection." The subsection involved makes no mention of amortization recomputation, extensively covered in other parts of the Act. The district court was therefore not required to make the recomputation, which might well have involved "staying the elimination" of defendants excessive profits liability. We have considered this question despite the fact that the issue was not explicitly raised in the pleadings because of defendants' further contention that the court should have permitted them to file appropriately amended answers. We hold that the court properly denied motions seeking such leave.
 
 
 12
 Defendants Wissahickon and Roxboro assert that the court erred in refusing to grant them offsets for the tax refund claims which were within the court's jurisdiction. Wissahickon demanded an offset of $839.78 which fell within the $10,000 jurisdictional limit imposed by 28 U.S. C. § 1346. But Wissahickon has already been allowed a credit for this amount by the revenue authorities, and cannot now reassert its claim by way of offset in this action. Roxboro's claim for $91,666.67 met the jurisdictional requirement of 28 U.S.C. § 1346, since the alleged overpayment had been made to a collector who was no longer in office when Roxboro's answer was filed. On the merits of the claimed refund the parties make vigorously conflicting contentions and draw different conclusions from the Internal Revenue certificates annexed to the affidavits. The district judge held that Roxboro's claim "has not been substantiated." 99 F.Supp. 331, at page 334. We think he was justified in so holding. It was defendant's obligation to go forward with support of its claim, Engl v. Aetna Life Ins. Co., 2 Cir., 139 F.2d 469; but all the record material available for decision seems to have been presented. Defendant Roxboro claims a refund of excess profits and income tax for its fiscal year 1942 in excess of the plaintiff's claim; but it also asserts that it has protested the amount and that the matter has not yet been determined. Plaintiff asserts a greater assessment still unpaid and beyond all defendant's claims for taxes for the year 1943, and substantiates this against defendant's denials with a "Certificate of Assessments and Payments" of the Collector of Internal Revenue dated January 19, 1949, and certified as correct by a Special Assistant to the Chief Counsel of the Bureau of Internal Revenue under date of November 2, 1950. Were this a matter about to become res judicata, there might be reason to grant defendant an opportunity to combat these late reports from the Bureau if it could. But since all these matters of tax refunds must be threshed out at some other place and time — to this defendant's advantage in repreparing its case — we think consideration of the matter not warranted here.
 
 
 13
 All of the defendants point out that their other tax refund claims, over which the court previously lacked jurisdiction, can now be heard because the Collector of Internal Revenue in office at the time has now retired. See 28 U.S.C. § 1346. The Collector, James W. Johnson, left his office on August 17, 1951 — i. e., after the court's final decision, but before the signing of the judgments from which these appeals were directly taken. At the later hearing the defendants did move to reinstate the offsets which had been previously struck and again to join Johnson as a party defendant. We find no abuse of the court's discretion under F.R. 15(d) in its denial of these motions. The court did not acquire jurisdiction of these claims until long after it granted the summary judgments; it should not be required to reopen its judgments for consideration of later developing litigation. Moreover, so much controversy surrounds defendants' dealings with the Bureau of Internal Revenue that the offsetting contentions presage extensive litigation. Plaintiff is entitled to have its present action for renegotiation rebate expeditiously determined, and should not have judgment postponed indefinitely while the parties gird for battle on the tax issues.
 
 
 14
 The district court allowed plaintiff interest on the amounts due from the defendants at the rate of six per cent, running from April 18, 1947. Defendants object to this award on several grounds. They contend that plaintiff was not entitled to any interest, since the Renegotiation Act did not provide for interest,[4] or at least that determination of the proper rate raised an issue of fact which precluded entry of summary judgment. And even if the rate was properly established, defendants disagree with its application to the entire amount of the judgments.
 
 
 15
 There can be no doubt that the Government may recover interest on sums due it even if the statute creating the obligation makes no provision for interest. Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596; United States v. Bonnell, 9 Cir., 180 F.2d 145; United States v. Philmac Mfg. Co., 3 Cir., 192 F.2d 517. The rate of interest is to be determined by the court in its discretion. On this point the Supreme Court has said: "In the absence of an applicable federal statute it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for non-payment of the amount found to be due." Royal Indemnity Co. v. United States, 313 U.S. 289, at page 296, 61 S.Ct. 995, 998, 85 L.Ed. 1361. A Government regulation in force at the time these suits were brought required the payment of interest at the rate of six per cent on renegotiation rebate liability. Renegotiation Manual § 626.2(3), 9 Fed.Reg. 12847. We do not consider this regulation absolutely binding on the district court, since it does not rest on explicit statutory authority, notwithstanding a holding to the contrary in the Third Circuit. United States v. Philmac Mfg. Co., supra. On the other hand, judicial departure from the administratively set rate should be restricted to the most compelling circumstances, so that the courts do not undermine the uniformity of the Government's collection procedure in attempting to do equity among the parties. See United States v. Bonnell, supra; United States v. Abrams, 6 Cir., 197 F.2d 803. Under the circumstances here, the district court was properly within its discretion in ordering interest at six per cent; and there was no triable issue of fact as to the appropriate rate. Plaintiff disclaims any intent to claim interest on the amounts withheld by it from Empire and Pencoyd and applied to the renegotiation debts here involved; obviously it is not entitled to interest on funds which it has retained and of which it has had the use. These questions, too, may be settled on plaintiff's statement of an account at the time of satisfaction of the judgments.
 
 
 16
 Plaintiff's affidavit in support of its motion for summary judgment satisfied the requirements of F.R. 56(e), and defendants' objections to it are not well founded. There being no genuine issue as to any material fact, the court properly rendered the judgments in favor of the plaintiff.
 
 
 17
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 On this appeal defendants concede the constitutionality of the Renegotiation Act, see Lichter v. United States, 334 U. S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694, which they contested in the court below
 
 
 [2]
 That the omission from 28 U.S.C. § 1346 (a) (1) of the explicit limitation contained in the former statute, 28 U.S.C., 1940 Ed., § 41(20), until it was restored by amendment by the Act of May 24, 1949, § 80(a), 63 Stat. 101, was a mere inadvertence is shown by the context and by the fact that the remainder of the provision granting jurisdiction "even if the claim exceeds $10,000" where the collector has died or is no longer in office would otherwise be quite meaningless
 
 
 [3]
 Defendants claim that the amount withheld was $955,282.27, but this seems to be based on an erroneous double inclusion of $887.52 withheld from defendant West Pittston
 
 
 [4]
 A provision for interest at the rate of 4% was added by the Renegotiation Act of 1951, 50 U.S.C.Appendix § 1215(b) (2), but has no retroactive application to the case at bar